**Salem**

EDWARD WAYNE TERRELL

v.

COMMONWEALTH OF VIRGINIA

No. 1181-89-3

Decided April 9, 1991

COUNSEL

Frank A. Mika, for appellant.

Leah A. Darron, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

## OPINION

**MOON, J.**—Edward Wayne Terrell, the appellant, seeks reversal of his conviction for two counts of abduction, three counts of rape, three counts of forcible sodomy, one count of burglary and one count of attempted forcible sodomy. Appellant alleges that the trial judge erred in failing to suppress the appellant's confession, in refusing to recuse himself and in refusing to allow appellant's counsel to withdraw after the trial judge had forwarded to the Virginia State Bar a portion of the record from a pretrial hearing containing allegations that trial counsel was not prepared. We hold that appellant's confession was voluntarily made after a knowing and intelligent waiver of his *Miranda* rights and the trial judge did not err in refusing to recuse himself or in refusing to allow counsel to withdraw.

The charges against the appellant stem from three separate assaults. The first occurred on April 10, 1984, at approximately midnight, when Cindy Lane, while walking along a highway in Waynesboro, was abducted at knife point and taken to nearby railroad tracks where she was raped and sodomized.

The second incident occurred on August 7, 1984, when Brenda Nodine was awakened in her apartment by a masked intruder. The intruder held her at knife point, raped and attempted to sodomize her. Ms. Nodine described her attacker as a white male with fine straight hair and approximately five feet ten inches tall. Her description fits the general physical description of the appellant. At trial, Ms. Nodine positively identified the appellant by recognizing his voice.

The third incident occurred on November 30, 1987, when Ruth Turner, an employee of a convenience store, went outside to dump garbage. She was attacked from behind and the assailant covered her head and took her to a nearby railroad track where she was raped and sodomized. Shortly after the November 30 assault, the police visited the crime scene with a tracking dog, which led them to 422 North Charlotte Avenue, Waynesboro, Virginia, the house of appellant's aunt and her family.

On January 6, 1988, the police secured an arrest warrant for the appellant but later picked him up at his grandmother's house under the pretense that he was needed to sign some papers. The appellant received his *Miranda* warnings and stated that he understood them and signed a written waiver. The police testified that it was their intention to record the entire interrogation; however, due to a tape malfunction the first ten minutes of the interrogation were not recorded. The appellant claims that he requested an attorney during these first ten minutes. However, police officers making the interrogation disputed this testimony.

The appellant is a 26 year old white male. He has an IQ between 71 and 75. A psychiatric evaluation characterized the appellant as a person who desires to please persons of authority. The appellant was questioned by police for approximately one and one-half hours. During the interrogation, members of the appellant's family attempted to communicate with him but were prevented from doing so by the police. The police made factual misrepresentations to the appellant, including a warning that the most recently raped victim might have AIDS which could be communicated to her attacker. They also indicated that some hairs consistent with the most recent victim were found on the appellant's clothes and that these hairs could be matched like fingerprints. The police officers told appellant that they believed he needed psychological help and that they would do their best to see that he got it.

We turn first to whether appellant waived his rights under *Miranda*.

A waiver of an accused's right of counsel must not only be voluntary; it must also constitute a knowing and intelligent relinquishment and abandonment of a known right or privilege. In each case, this depends "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

*Eaton v. Commonwealth*, 240 Va. 236, 250-51, 397 S.E.2d 385, 394 (1990), *cert. denied*, 112 S. Ct. 88 (1991) (citing *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)) (citations omitted). The validity of a waiver of *Miranda* rights is a factual determination and if supported by the evidence will not be reversed on appeal. *Goodwin v. Commonwealth*, 3 Va. App. 249, 253, 349 S.E.2d 161, 163 (1986).

The appellant was advised of his *Miranda* rights and indicated his willingness to talk to police officers. The record indicates the appellant possessed sufficient intelligence and experience with the criminal justice system to support a finding that he executed a valid waiver. During the interrogation, when confronted with the damaging evidence against him, appellant made four separate references to an attorney. None of these references were considered by the police officers or by the trial judge to be a request for an attorney. The appellant made the following statements: (1) "Well, I will have to get a lawyer I reckon;" (2) "I am trying to get along with all you, I know I didn't do all of this but I'll get a lawyer;" (3) "Well, I'll just have to get a lawyer and worry about it then;" and (4) "I know I didn't do all this but I'll get a lawyer." During the interrogation, the defendant admitted having committed all three assaults.

■ "[C]ustodial interrogation must cease, when the accused, having received *Miranda* warnings and having begun to respond to the questions of the authorities, 'has *clearly* asserted his right to counsel.'" *Eaton*, 240 Va. at 253-54, 397 S.E.2d at 396 (quoting *Edwards*, 451 U.S. at 485). "A waiver of the right to counsel, however, need not be explicit; it can be shown by the circumstances." *Eaton*, 240 Va. at 251, 397 S.E.2d at 394. The trial judge found that the appellant's statements did not constitute a request for counsel but merely indicated "that he was aware of his rights to an attorney and was going to get one in the future at some point."

Two Virginia cases address instances of similar equivocal statements made by defendants. In *Eaton*, the defendant had prior experience with the criminal justice system because of several prior arrests. He received numerous *Miranda* warnings and had previously conferred with court-appointed counsel on other charges. The defendant was in the low average range of intelligence. In *Eaton*, the defendant said: "[y]ou did say I could have an attorney if I wanted one?" He contended "that when he mentioned his right to counsel the interview should have ended immediately." *Id.* at 252, 397 S.E.2d at 395. The Supreme Court affirmed the trial court's finding that the defendant's utterances concerning his right to counsel were equivocal, falling far short of a clear assertion of a desire to consult with counsel and did not represent an invocation of his right to counsel. *Id.* at 254-55, 397 S.E.2d at 395.

Similarly, in *Poyner v. Commonwealth*, where the defendant stated: "[D]idn't you say I have the right to an attorney?" the Supreme Court held this statement not to be a request for counsel. 229 Va. 401, 410, 329 S.E.2d 815, 823, *cert. denied*, 474 U.S. 865 (1985).

█ The trial court's finding that an accused has executed a valid waiver of his *Miranda* rights is one of fact and will not be reversed if supported by the evidence. *See Goodwin*, 3 Va. App. at 253, 349 S.E.2d at 163. Having reviewed the entire transcript of the confession, including the appellant's references to an attorney in the context in which they were made, we find that he willingly conversed with the police. His statement did not represent a desire to have counsel present during the interrogation; he merely indicated that he wished to obtain counsel if charged with the crimes upon which he was being questioned. We hold that the evidence supports the findings of the trial judge.

Next we turn to the voluntariness of the confession.

The burden is upon the Commonwealth to prove, by a preponderance of the evidence, that Williams' statement was voluntary. Whether a statement is voluntary is ultimately a legal rather than a factual question, but subsidiary factual questions are entitled to a presumption of correctness. Moreover, [case law] points out that following a trial court's finding of voluntariness, the scope of our appellate review is limited to determining whether the evidence supports the finding. The trial court's finding on this issue is entitled to the "same weight as a fact found by a jury, and that finding will not be disturbed on appeal unless plainly wrong."

*Williams v. Commonwealth*, 234 Va. 168, 172, 360 S.E.2d 361, 364 (1987), *cert. denied*, 484 U.S. 1020 (1988) (citations omitted).

█ "[I]n order to determine whether a statement is voluntary, we must decide, in light of the totality of the circumstances, whether the statement is the product of an essentially free and unconstrained choice by its maker, or whether the maker's will has been overborne and his capacity for self-determination critically impaired." *Rodgers v. Commonwealth*, 227 Va. 605, 609, 318 S.E.2d 298, 300 (1984) (citing *Stockton v. Commonwealth*, 227 Va. 124, 140, 314 S.E.2d 371, 381, *cert. denied*, 469 U.S. 873 (1984)). "[T]he totality of the circumstances includ[e] not only

the details of the interrogation, but also the characteristics of the accused." *Kauffmann v. Commonwealth*, 8 Va. App. 400, 405, 382 S.E. 279, 281 (1989). We must consider the personal characteristics of the accused, including his intelligence, education, prior experience with police, use of drugs or alcohol, emotional or mental disability, and the deprivation of physical comforts. *See* R. Bacigal, *Virginia Criminal Procedure* § 7-2 (2d ed. 1989). We also must consider the interrogation techniques employed, including evidence of trickery and deceit, psychological pressure, threats or promises of leniency, and duration and circumstances of the interrogation. *Id*. However, they "are merely factors to be considered in determining whether the Commonwealth has met its burden of proving voluntariness by a preponderance of the evidence." *Id*.

█ The intelligence of the accused is a significant factor to be considered in determining the voluntariness of a statement. There is no strict standard for the acumen below which the product of interrogation will be deemed involuntary. In *Simpson v. Commonwealth*, 227 Va. 557, 318 S.E.2d 386 (1984), the Court determined that a twenty year old defendant with an eighth grade education, an IQ of 78, with "borderline intelligence" who was determined to function "at a second grade level" voluntarily made inculpatory statements to the police. *Id*. at 564, 318 S.E.2d at 390. The Court based its ruling on the fact that the defendant in *Simpson* had been advised of his *Miranda* rights three times and according to expert testimony had the street sense to understand his rights.

In *Washington v. Commonwealth*, 228 Va. 535, 323 S.E.2d 577 (1984), *cert. denied*, 471 U.S. 1111 (1985), a twenty-three year old defendant had an IQ score of 69, which is in the "upper limits of mild mental retardation." The defendant, however, had a ninth grade education. The defendant also asserted that his interrogation was "unreasonably long and wearisome." In finding that the defendant's inculpatory statements were voluntarily made, the Court referred to the testimony of a witness who had stated:

> The defendant, . . . demonstrated a basic familiarity with the workings of the criminal justice system and with its terminology. In this connection, [the defendant] . . . testified to two previous encounters with the criminal justice system, when he was 14 and 16 years old, respectively. He said that

on each of these occasions he had been advised of his *Miranda* rights.

*Id.* at 546, 323 S.E.2d at 584.

Here, police officers made misrepresentations to the appellant indicating that hair fibers could be matched with the same degree of accuracy as fingerprints and that one of the victims had AIDS.

In a case addressing misrepresentations made during interrogation by police officers, the Virginia Supreme Court stated that "an outright falsehood by a police interrogator is but another factor to be considered in evaluating the totality of the circumstances." *Rodgers*, 227 Va. at 616, 318 S.E.2d at 303.

Appellant is twenty-six years old with an IQ between 71 and 75. He is not "retarded" but his mental capacity is characterized as "dull-normal." A psychological evaluation indicates that he has a predisposition to accede to authority figures. However, he had enough presence of mind to complain to the trial judge that his lawyer had to do a "rush job" on his case, and that with more time things could be "checked" into. The appellant indicated that he understood his *Miranda* rights and executed a written waiver after they had been read to him. The appellant had experience with the criminal justice system through four previous felony convictions and one conviction of a crime involving moral turpitude. He had been incarcerated from September 1984 until August 1987. The deceptive remarks by police were not such as to undermine the appellant's free will or cause an innocent person to falsely confess. Only a guilty person would be concerned if the victim had AIDS or that hair samples could be matched like fingerprints. Upon our independent review of the record and based upon the totality of the circumstances, we conclude that the appellant's confession was voluntary.

The appellant argues that it was error for the trial judge to refuse to recuse himself after the trial judge filed a copy of the transcript with the Virginia State Bar containing appellant's allegation that his counsel was unprepared and after defense counsel had prepared a counter-complaint against the trial judge. The appellant argues that under Rules of the Virginia Supreme Court, Part VI, § 3, Canons I and II, a trial judge should avoid even the appearance of impropriety.

■ It is within the trial judge's discretion to determine whether he harbors bias or prejudice which will impair his ability to give the defendant a fair trial. *Justus v. Commonwealth*, 222 Va. 667, 673, 283 S.E.2d 905, 908 (1981), *cert. denied*, 455 U.S. 983 (1982). The trial judge concluded that he had no question but that he was "able to hear the case impartially." In the first place, "[a] judge is presumed not to confuse the evidence in one case with that of another." *Dove v. Peyton*, 343 F.2d 210, 214 (4th Cir. 1965). Secondly, assuming arguendo some animosity between the trial judge and defense counsel, that does not suggest that the trial judge would deny a fair trial to the lawyer's indigent client.

Therefore, we hold that upon this record there is no showing that the trial judge abused his discretion in failing to recuse himself.

The appellant also contends that it was error for the trial court to refuse to allow the appellant's counsel to withdraw as counsel of record after the trial judge filed a complaint alleging the ineffective preparation of counsel. Again, it was within the discretion of the trial judge whether to allow counsel to withdraw. The evidence shows that the trial judge, after finding that the appellant's counsel was inadequately prepared on one trial date, granted a continuance. The motion to withdraw was made less than two days prior to trial after numerous witnesses had been subpoenaed and the case has been pending for nine months. Under the circumstances, the trial judge did not abuse his discretion by refusing to grant counsel's motion.

Therefore, the judgment of the trial court is affirmed.

*Affirmed.*

Coleman, J., and Keenan, J., concurred.