SCOTTIE M. DUNBAR

v.

DOROTHY HOGAN

No. 0780-92-3

Decided June 29, 1993

COUNSEL

Leroy Moran (Leroy Moran & Associates, on brief), for appellant.

Tonita M. Foster, for appellee.

V. Anne Edenfield, Guardian *ad litem*, for Stephanie Dawn Dunbar.

OPINION

**COLEMAN, J.**—In this domestic relations appeal, we hold that a sworn Declaration of Paternity, although it "ha[s]. . . the same legal effect as a judgment entered pursuant to Code § 20-49.8," [1] is not *res judicata* of paternity, nor does it collaterally estop a party in interest from adjudicating the issue of paternity, where no previous judicial determination of paternity has been made.

On August 8, 1990, Scottie Dunbar signed a Declaration of Paternity acknowledging under oath that he is the father of a female child born out of wedlock on June 24, 1980, to Dorothy Hogan. Three

---

[1] At the time of these proceedings, Code § 20-49.1 provided as follows:

A. The parent and child relationship between a child and a woman may be established prima facie by proof of her having given birth to the child, or as otherwise provided in this chapter.

B. The parent and child relationship between a child and a man may be established by a written statement of the father and mother made under oath acknowledging paternity or subsequent genetic blood testing which affirms at least a 98 percent probability of paternity. Such statement or blood test result shall have the same legal effect as a judgment entered pursuant to § 20-49.8. In the absence of such acknowledgment or if the probability of paternity is less than 98 percent, such relationship may be established as otherwise provided in this chapter. Written acknowledgments of paternity made under oath by the father and mother prior to July 1, 1990, shall have the same legal effect as a judgment entered pursuant to § 20-49.8.

C. The parent and child relationship between a child and an adoptive parent may be established by proof of lawful adoption.

months after Dunbar signed the Declaration, Hogan filed a petition in the Roanoke juvenile court seeking child support from him. On Dunbar's motion, the court ordered that an HLA paternity test be performed, the results of which excluded any possibility that Dunbar is the biological father of the child.[2] Dunbar defended Hogan's support petition on the ground that Hogan had obtained Dunbar's signature on the Declaration of Paternity by fraud and on the ground that Dunbar was not the child's biological father. The trial judge ruled that the Declaration of Paternity was not obtained by fraud and held that the provisions of former Code § 20-49.1 estopped Dunbar from disclaiming that he is the child's father and from disproving his paternity with evidence of the HLA test results. Thus, the judge ruled that Dunbar could not litigate the issue of paternity in the support petition. Dunbar appeals the trial judge's rulings.

## I. FRAUD AND DECLARATION OF PATERNITY

Dunbar testified that Hogan asked him to accompany her to her attorney's office to sign a sworn Declaration of Paternity form so that she could obtain an amended birth certificate for the child that would list Dunbar as the father and that would change the child's last name to Dunbar. Because Hogan had told Dunbar that he was the father of her child, he had no reason to doubt that fact or to take steps to ascertain the truth of Hogan's assertion. He assumed that he was the child's father. Dunbar, who had only a seventh grade education, argues that, because he was not advised by counsel before signing the Declaration of Paternity and because Hogan had concealed from him her actual purpose and intention, she defrauded him.

Hogan testified that her attorney explained to Dunbar the significance of the Declaration of Paternity form before Dunbar signed it. She also stated that she believed, and continues to believe, that Dunbar is the father of her child because, according to her, "no one else possibly could be." Hogan brought her ten-year-old daughter to the hearing to demonstrate that she resembled Dunbar.

A party alleging fraud must prove by clear and convincing evidence that a person knowingly and intentionally made a false representation of a material fact with the intent to mislead and that the other party relied on the misrepresentation to his detriment. *Batrouny v.*

---

[2] The results of a second HLA test which Hogan requested were admitted in evidence; they, too, excluded Dunbar as the child's biological father.

*Batrouny*, 13 Va. App. 441, 443, 412 S.E.2d 721, 723 (1991). Where the credibility of witnesses is crucial to the determination of whether the facts support a finding of fraud, the judge's evaluation of the witnesses' testimony heard *ore tenus* and the weight to be given the testimony will not be disturbed on appeal unless the judge's findings are plainly wrong or without evidence to support them. *Shortridge v. Deel*, 224 Va. 589, 592, 299 S.E.2d 500, 502 (1983).

Although the HLA test results show that Dunbar is not the biological father of Hogan's daughter, the evidence does not show that Hogan knew this fact or that she concealed or misrepresented it to Dunbar to obtain his sworn Declaration of Paternity in order to obtain child support. In fact, Hogan maintains that she continues to believe that Dunbar is the father of her child. The evidence fails to prove that Hogan knowingly and intentionally made a false representation of a material fact to Dunbar intending to mislead him. The trial court did not err in finding the evidence insufficient to prove fraud.

## II. COLLATERAL ESTOPPEL

■ "The determination of parentage, when raised in any proceeding, shall be governed by [Chapter 3.1 of Title 20 of the Code of Virginia]." Code § 20-49.2. Proceedings to determine parentage under Chapter 3.1 may be instituted by a sworn petition from any of several specified parties. *Id.* Former Code § 20-49.1(B) provided the manner by which a party in interest could establish the paternity of a man:

The parent and child relationship between a child and a man may be established by a written statement of the father and mother made under oath acknowledging paternity or subsequent genetic blood testing which affirms at least a 98 percent probability of paternity. *Such statement or blood test result shall have the same legal effect as a judgment entered pursuant to Code § 20-49.8.*

Id. (emphasis added). When there is no affidavit of paternity, or when the results of a genetic blood test show a probability of paternity of less than ninety-eight percent, the paternal relationship "may be established as otherwise provided" in the chapter. *Id.*

■ The trial judge ruled that, by giving the Declaration of Paternity "the same legal effect as a judgment entered pursuant to Code § 20-49.8" as required by Code § 20-49.1(B), the issue of paternity has been decided as if by a judgment and Dunbar is forever estopped from denying or litigating the fact of paternity. The question of Dunbar's

paternity has never been judicially decided. We hold that the provision in former Code § 20-49.1(B) that an affidavit of paternity shall have the same legal effect as a judgment "entered pursuant to Code § 20-49.8" means that for purposes of determining or enforcing support or custody, visitation, or guardianship, the statement or test results shall support adjudicating those issues without having to adjudicate paternity. The statement or a ninety-eight percent test result does not have the same legal effect as a judgment of paternity for all purposes, particularly for purposes of collaterally estopping a party from adjudicating the fact or issue of paternity that has never been judicially determined.

■ The doctrine of collateral estoppel provides that parties to an action and their privies are precluded from litigating in a subsequent action " 'any issue of fact actually litigated and essential to a valid and final personal judgment in the first action.' " *Slagle v. Slagle*, 11 Va. App. 341, 344, 398 S.E.2d 346, 348 (1990) (quoting *Norfolk & W. Ry. v. Bailey Lumber Co.*, 221 Va. 638, 640, 272 S.E.2d 217, 218 (1980)). "A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and *res judicata*, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the parties.' " *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). Dunbar, unlike his counterpart in *Slagle* who wanted to use HLA test results disproving paternity to assail a prior adjudication that he was the father, has never had the issue of paternity "actually litigated" in a "court of competent jurisdiction." The first occasion that he has been called upon to litigate the issue of his paternity was when Hogan filed the petition for child support.

■ Although a man may acknowledge paternity under oath, or even though the results of a blood test may show a ninety-eight percent probability of paternity, a putative father cannot be deprived of the right to have the issue of paternity litigated. The provision of former Code § 20-49.1 that the sworn statement and test results shall have the same legal effect as a judgment "entered pursuant to Code § 20-49.8" was not intended to foreclose adjudication of that issue. While the sworn statement or test results may "have the same legal effect" as a judgment of paternity for purposes of support, custody, and visitation, the fact of paternity carries with it other rights, such as inheritance, with which Code § 20-49.8 is not concerned.

■ The drafters of former Code § 20-49.1 adopted the provision that a sworn statement of paternity or the ninety-eight percent blood test results would have the same legal effect as a judgment of paternity in order to alleviate the backlog of child support cases by providing a means to expedite the paternity/support proceedings where fathers willingly acknowledged paternity, but contested support, custody, visitation or guardianship issues. *See* 1990 General Assembly, Summary of Legislative Proposal Priority 1, Department of Social Services, Legislative Draft File, House Bill 961 (1990). The statute was not intended to preclude, and did not preclude, a father from adjudicating paternity where there had been no prior adjudication, even when the blood test results showed a ninety-eight percent probability of paternity or where he may have acknowledged paternity under oath. The statute, as amended in 1990, was intended to permit parties who acknowledged paternity, or who did not dispute paternity and the blood test results showed a ninety-eight percent probability of paternity, to have support, visitation, and custody determined without having to fully litigate paternity.

■ An order of support or custody or visitation entered pursuant to Code § 20-49.8 which is based on the sworn Declaration of Paternity or on the blood test results would, based on the provisions of former Code § 20-49.1, be *res judicata* or would collaterally estop the parties from relitigating the fact and issue of paternity. However, where no judgment or order establishing parentage pursuant to Code § 20-49.8 has been entered based on the sworn Declaration of Paternity or on the blood test results, there has been no judicial determination of the fact or issue of paternity and the putative father may contest that issue in the support proceedings.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

Koontz, J.,* and Bray, J., concurred.

---

* When the case was argued, Judge Koontz presided. Judge Moon was elected Chief Judge effective May 1, 1993.