COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judge Annunziata and
          Senior Judge Hodges
Argued at Richmond, Virginia

WILLIAM McFADDEN AND
 CATHERINE McFADDEN

MEMORANDUM OPINION[*] BY
v.        Record No. 2086-94-2        JUDGE ROSEMARIE P. ANNUNZIATA
                                          DECEMBER 5, 1995

ALEIDA MEJIA McFADDEN


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Melvin R. Hughes, Jr., Judge

            Denis C. Englisby (Englisby & Englisby, on brief),
            for appellants.

            No brief or argument for appellee.

            Torrence M. Harman (Harman & Harman, on brief),
            Guardian ad litem, for Soley McFadden, an infant.


        Appellants William McFadden (William) and Catherine McFadden

(Catherine) appeal the order of the circuit court denying

William's motion to set aside and motion for injunction and

deciding other issues.  Appellants raise the following issues on

appeal: (1) whether the trial court erred by denying William's

motion to recuse; (2) whether the trial court erred in sustaining

the guardian ad litem's motion to strike; and (3) whether the

trial court erred in denying Catherine's petition to intervene.

We affirm the trial court's decision.

        By final decree entered March 2, 1990, Aleida McFadden

(Aleida) was granted a divorce from William on the ground that

_____
        [*] Pursuant to Code § 17.116.010 this opinion is not
designated for publication.

the parties had lived separate and apart for one year. The final decree incorporated by reference the couple's Separation and Property Settlement Agreement (Agreement). The final decree noted that "there are two (2) infant children born of the marriage," one of whom was Soley Kim McFadden (Soley). In pertinent part, the final decree also stated the following:

> ADJUDGED, ORDERED and DECREED that defendant, William S. McFadden shall hold, invest and use all funds given to him for the purpose of providing his children a college education and for no other purpose other than to pay the costs of a college education for each of the infant children and he shall not transfer or dissipate said funds and income for any other purpose pursuant to paragraph 19 of said agreement.

By decree dated May 29, 1991, the circuit court assumed control over those funds when Aleida presented evidence that William was misusing the funds in violation of the Agreement.

In 1993, William filed a motion pursuant to Code § 8.01-428, alleging fraud on the part of Aleida and requesting that the divorce case be reinstated on the court's docket. William alleged that Soley was not his biological daughter, asked the trial court to set aside its factual finding concerning the paternity of Soley and her right to the funds being held by the court, and sought the return of child support previously paid plus additional damages. The court granted the motion of the guardian ad litem to strike William's case for his failure to establish fraud on the part of Aleida.

2

"It is within the trial judge's discretion to determine whether he harbors bias or prejudice which will impair his ability to give the defendant a fair trial." Terrell v. Commonwealth, 12 Va. App. 285, 293, 403 S.E.2d 387, 391 (1991).

"In exercising such discretion, a judge must not only consider his or her true state of impartiality, but also the public's perception of his or her fairness, so that the public confidence in the integrity of the judicial system is maintained." Buchanan v. Buchanan, 14 Va. App. 53, 55, 415 S.E.2d 237, 238 (1992). However, "[e]ven when circumstances create an appearance of bias, unless the conduct of the judge is shown to have affected the outcome of the case," the trial court's determination will not be reversed. Welsh v. Commonwealth, 14 Va. App. 300, 317, 416 S.E.2d 451, 461 (1992), aff'd, 246 Va. 337, 437 S.E.2d 914 (1993). The trial court's determination will be reversed on appeal only for an abuse of discretion. Terrell, 12 Va. App. at 293, 403 S.E.2d at 391.

William's motion to recuse noted that he had filed a complaint against the judge with the Judicial Inquiry and Review Commission. In addition, William contended that because the judge had been involved in the earlier divorce action and had previously ruled against him, the judge was biased against him. William also alleged that the judge engaged in ex parte communications with Aleida and failed to place William's

correspondence and pertinent orders into the record.

The filing of a complaint against a judge does not require recusal.  See id. at 293, 403 S.E.2d at 391.  Similarly, "`[m]erely because a trial judge is familiar with a party and his legal difficulties through prior judicial hearings . . . does not automatically or inferentially raise the issue of bias.'" Buchanan, 14 Va. App. at 55, 415 S.E.2d at 238 (quoting Deahl v. Winchester Dep't. of Social Servs., 224 Va. 664, 672-73, 299 S.E.2d 863, 867 (1983)).

Moreover, nothing in the record supports William's claim that the judge participated in improper ex parte communication. On the contrary, the record indicates that, despite the high volume of letters filed throughout the course of the litigation, the judge kept all parties notified of correspondence it received from each side.  Even accepting the allegation that several documents are missing from the record, we cannot say that this factor illustrates prejudice or bias on the part of the judge against William.  Therefore, we cannot say that the judge's denial of William's motion to recuse was a clear abuse of discretion.

## II.

"Upon familiar principles, we review the evidence on appeal in the light most favorable to wife, the party prevailing below." Cook v. Cook, 18 Va. App. 726, 731, 446 S.E.2d 894, 896 (1994). "'Where . . . the court hears the evidence ore tenus, its

4

finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Pommerenke v. Pommerenke, 7 Va. App. 241, 244, 372 S.E.2d 630, 631 (1988) (quoting Martin v. Pittsylvania Dep't of Social Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)).

William filed a motion, pursuant to Code § 8.01-428(D),[1] to set aside portions of the final divorce decree. William alleged that Aleida fraudulently misrepresented that William was Soley's father. As the party seeking to set aside a final order on the basis of fraud, appellant had the burden of proving "`(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.'" Batrouny v. Batrouny, 13 Va. App. 441, 443, 412 S.E.2d 721, 723 (1991) (quoting Winn v. Aleda Constr. Co., Inc., 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984)).

While William presented the results of a blood test as evidence that he was not Soley's father, he presented no evidence establishing Aleida's knowing or intentional misrepresentation of

[1]This subsection provides as follows:

> This section does not limit the power of the court to entertain at any time an independent action to relieve a party from any judgment or proceeding, or to grant relief to a defendant not served with process as provided in § 8.01-322, or to set aside a judgment or decree for fraud upon the court.

Prior to the 1993 amendment, this subsection was codified as § 8.01-428(C).

5

the paternity of Soley.  On the contrary, Aleida testified that she was "shocked" to learn the results of the blood test and maintained throughout her testimony that she believed that Soley was, in fact, William's child.  Aleida denied having intercourse with anyone other than William during their marriage, although she admitted she had been raped in the parking lot of her place of employment.  Aleida also admitted she had not reported the rape to the police or to William, but testified that she was "very, very afraid of the reaction from my husband" if she had disclosed the rape.  Aleida testified that "I had no reason to believe at the time that Soley -- the birth of Soley had any relation to that.  But I don't know for sure."

The trial judge, who had the opportunity to observe the witnesses, found Aleida's testimony credible.  "Where the credibility of witnesses is crucial to the determination of whether the facts support a finding of fraud, the judge's evaluation of the witnesses' testimony heard <u>ore</u> <u>tenus</u> and the weight to be given the testimony will not be disturbed on appeal unless the judge's findings are plainly wrong or without evidence to support them."  <u>Dunbar v. Hogan</u>, 16 Va. App. 653, 657, 432 S.E.2d 16, 18 (1993) (citing <u>Shortridge v. Deel</u>, 224 Va. 589, 592, 299 S.E.2d 500, 502 (1983)).

"The charge of fraud is one easily made, and the burden is upon the party alleging it to establish its existence, not by doubtful and inconclusive evidence, but clearly and conclusively.

6

Fraud cannot be presumed.  It must be proved by clear and satisfactory evidence."  <u>Aviles v. Aviles</u>, 14 Va. App. 360, 366, 416 S.E.2d 716, 719 (1992).  To establish a <u>prima face</u> case where close family relationships underlie the alleged fraudulent transaction, only slight evidence is required, however.  <u>Haynes v. Bunting</u>, 152 Va. 395, 399, 147 S.E. 211, 212 (1929).  The <u>prima facie</u> showing in this case turned on the credibility of the witnesses which the trial judge resolved in favor of Aleida.  As William failed to establish a <u>prima facie</u> case that Aleida intentionally and knowingly made a false representation of a material fact with the intent to mislead, we cannot say the trial judge erred in granting the guardian <u>ad litem's</u> motion to strike.

## III.

Under Rule 2:15, "[a] new party may by petition filed by leave of court assert any claim or defense germane to the subject matter of the suit."  An intervenor must assert some right or claim involved in the suit.  <u>Layton v. Seawall Enters., Inc.</u>, 231 Va. 402, 403, 344 S.E.2d 896, 897 (1986).  The denial of a petition to intervene will not be overturned on appeal absent an abuse of discretion.  <u>See</u> <u>Shank v. Department of Social Servs.</u>, 217 Va. 506, 511, 230 S.E.2d 454, 457 (1976).

Catherine, Soley's grandmother, filed a petition to intervene in order to participate in the disposition of funds held by the court pursuant to its previous orders.  The Agreement and the final decree of divorce provided that William was

7

responsible for holding these funds.  Catherine contends that the funds belong to her.

The decree's provision was enforceable by the court through its contempt powers.  Doherty v. Doherty, 9 Va. App. 97, 99, 383 S.E.2d 759, 760 (1989).  Under neither the court's decree nor the Agreement did Catherine retain a right to recover these funds.

Moreover, in the arguments before the trial court, Catherine challenged the court's decision in 1991 to hold the funds in trust following William's misuse of those funds.  Catherine did not pursue an appeal of the court's order at that time and it became final.  Rule 1:1.  While it may be noted that Catherine has not been a party in this matter, the record contains many letters to the court from Catherine demonstrating that she followed the litigation closely, but failed to seek relief from the final orders effecting the disposition of the funds.

Ultimately, Catherine's petition to intervene is linked to the allegation of fraud made by William in his motion to set aside portions of the divorce decree.  The trial court ruled that William had failed to establish fraud.  Therefore, we cannot say that the trial court's decision denying Catherine's petition to intervene was an abuse of discretion.

Accordingly, the decision of the circuit court is affirmed.

Affirmed.

Hodges, J. dissenting.

I am constrained to dissent from the majority opinion. The issue in this case revolves on the credibility of the appellee who was called as an adverse witness by William. The fact that William is not the father of the child is undisputed.

Because of the birth control practices of the parties before the child's birth, William was suspicious when the child was born. Until the DNA testing, he had no knowledge that he was not the father and to that point had supported and assumed his paternal responsibilities. There is absolutely no evidence to show that he assumed any obligation to the child with knowledge of paternity by another.

When the appellee was confronted with the DNA results, she through her counsel endorsed a consent decree which would have adjudicated that William was not the father and that he be relieved of any further obligation for support. The trial court rejected the decree but did grant William leave to proceed with a hearing. When called as an adverse witness by William, appellee testified as follows:

> Q. Okay. Were you having sexual intercourse with another man prior to the time Soley was born?
>
> A. On that, I can say that there was a time when I was raped in the parking lot of my work; and I had no reason to believe at the time that Soley -- the birth of Soley had any relation to that. But I don't know for sure. In my heart, I know that Soley is Bill's father -- I mean, Soley's father.
>
> Q. You were raped in the parking lot?
>
> A. At my work. Correct.

9

Q. Prior to Soley's birth?

A. I don't remember exactly at what time. I wanted to get it out of my mind.

Q. Yes, ma'am. Did you report it to the police?

A. No.

Q. No.

A. I did not report it to the police or to my husband because I was very, very afraid of the reaction from my husband, what he would do, whether he would come to work and maybe start killing everyone. Furthermore, I would end up losing my job as a result. He would probably end up killing me for not having a job.

Q. Yes, ma'am. Have you ever had sexual intercourse with another man other than the rapist prior to Soley's birth?

A. No, sir. Never. During my marriage, I never -- As a matter of fact, I never had anything else to do with any other man besides my husband Bill McFadden at that time and now my current husband.

On motion of the child's guardian ad litem, the trial judge in reliance on the foregoing testimony of the appellee, struck William's evidence.

"The court is the judge of the credibility of the witnesses, and its findings are of great weight on appeal." Klein v. Klein, 11 Va. App. 155, 161, 396 S.E.2d 866, 869 (1990) (citing Shortridge v. Deel, 224 Va. 589, 592, 299 S.E.2d 500, 502 (1983)).

"The [fact finder's determination] . . . may only be disturbed on appeal if this Court finds that [the witness'] . . . testimony was 'inherently incredible, or so

10

contrary to human experience as to render it unworthy of belief.'" Robertson v. Commonwealth, 12 Va. App. 854, 858, 406 S.E.2d 417, 419 (1991) (quoting Fisher v. Commonwealth, 228 Va. 296, 299-300, 321 S.E.2d 202, 204 (1984) (Robertson involved a challenge to the credibility of the key witness).

I find the appellee's testimony to be inherently incredible. She did not remember whether the alleged rape occurred before or after the child's birth; she did not report it to the police; and most importantly, did not report it to her husband or any other family member. Moreover, appellee's uncertainty of when the rape was committed completely eliminated any consideration that conception resulted from such a dastardly, despicable act if it did in fact take place.

On this evidence, it will be a grave injustice to require William to support a child undisputedly not his. I would reverse and remand for a full hearing.