## CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

Jonathan Sorah

November 20, 1996

Case No. CR090923

BY JUDGE LESLIE M. ALDEN

This matter was heard upon the defendant's (Sorah) motion to suppress two statements made by him to Detective Mike Headley of the Fairfax County Police Department. Sorah has been indicted for first degree murder in the shooting death of his brother around 7:30 p.m. on June 8, 1996. The first statement sought to be suppressed was made by Sorah at approximately 9:30 p.m. while he was being interviewed by Headley at a local police station. Prior to his responses during this interview, Sorah was not given warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). The second statement was made by Sorah at approximately 11:15 p.m. the same evening after having been advised pursuant to *Miranda* by Headley. For the reasons that follow, the motion is granted with respect to the first statement and denied with respect to the second.

Although he was not under arrest at the time of the first statement, Sorah argues that he should have been advised of his rights under *Miranda* because he was subject to interrogation by, and in the custody of, the police. In addition, Sorah contends that both statements should be suppressed because, considering the totality of the circumstances, Sorah's statements were not voluntary and were coerced by the police.

*Facts*

During the suppression hearing, Officer Alfreda testified that when he arrived at Sorah's home, the scene of the shooting, he observed Sorah on his knees on the ground, upset and panting. The crime scene was being secured, and the police were awaiting the arrival of the homicide detective, Detective Headley (Headley). Alfreda was advised that Sorah was the shooter and that his relatives, who were present, were witnesses to the incident. Later, Sorah was observed laying on the ground in a fetal position, alternately hugging a dog for comfort, crying, heaving, and vomiting. After about one hour, the detectives had not yet arrived, and as it was getting dark, Alfreda asked Sorah if he would like to accompany the officer to the police station. Sorah agreed and was taken to the station where he waited for Headley to arrive. Sorah was neither restrained nor confined and did not ask to leave the station; however, Alfreda testified that he would not have allowed Sorah to leave had he so requested.

About thirty minutes later, Headley arrived at the station to interview Sorah regarding the incident. Sorah was still visibly upset, heaving, and whimpering but asserted that he was "OK" and would answer questions. Thus, following the first statement wherein Sorah, in response to questioning, described the circumstances surrounding the shooting and his participation in it.

After the statement was made, Headley, who had not yet inspected the scene of the shooting, left the station and went to Sorah's home. Upon his return to the station, Headley advised Sorah that he was being charged with malicious wounding, and he was advised of his rights pursuant to *Miranda*. After executing a written waiver form, Sorah gave his second statement regarding the incident.

### The First Statement

The *Miranda* rule applies when a defendant is subject to custodial interrogation by the police. *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). This is true even if there is no evidence of coercion by the police; statements obtained during custodial interrogation, prior to receipt of *Miranda* warnings, must be suppressed. *Moore v. Ballone*, 488 F. Supp. 798, 803 (E.D. Va. 1980). This is to protect against the "coercion inherent in custodial interrogations." *Id.*

"Interrogation" means "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the

suspect." *Jenkins v. Commonwealth*, 244 Va. 445, 453, *cert. denied*, 113 S. Ct. 1862 (1992). There is no doubt that the detective's questions to Sorah were "reasonably likely to elicit an incriminating answer."[1] They did in fact elicit such answers.[2] Thus, the "interrogation" requirement is satisfied.

The "custody" requirement is also satisfied. A defendant in "custody" need not be under arrest. Rather, under certain circumstances, if the defendant is "deprived of his freedom of action in any significant way," he is effectively in custody. *Miranda*, 384 U.S. at 444. Several factors must be considered in determining whether a defendant is in custody:

> [The] nature of the interrogator, the nature and condition of the suspect, the time and length of the questioning, the nature of the questioning — accusatory or investigatory, the focus of the investigation at the time of the questioning, and the place of interrogation.

*Moore*, 488 F. Supp. at 805. Although the station-house questioning alone is not dispositive, *Pruett v. Commonwealth*, 232 Va. 266, 271, *cert. denied*, 482 U.S. 931 (1986), it is nevertheless relevant in a consideration of whether Sorah should have been advised of his *Miranda* rights. Two other factors lend further support to the finding that Sorah was in "custody": the police's confidence that Sorah was the gunman and the fact that the police would not have permitted Sorah to leave had he expressed a desire to do so. Indeed, the evidence showed that Sorah said he wanted to go home, but Headley asked him to wait. Considered in their totality, these facts show that Sorah's freedom of action was clearly limited.

I thus find that the defendant was in custody while Detective Headley questioned him. Therefore, I grant Sorah's motion to suppress the first statement which he gave before receiving his *Miranda* warnings.

### The Second Statement

Sorah gave his second statement after receiving *Miranda* warnings. Sorah asserts that his second statement is tainted by the first statement, which was taken improperly. However, the Supreme Court stated:

---

[1] *E.g.*, "You then did what with the rifle . . .?"; "Do you know how many times you shot him?" First Interrogation Transcript (Tr.) at 4.

[2] *E.g.*, "I shot him." First Interrogation Tr. at 3, 4.

It is an unwarranted extension of *Miranda* to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Though *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made.

*Oregon v. Elstad*, 470 U.S. 298, 309 (1985).

Although Sorah was effectively in custody, there is no evidence that either statement was a product of police coercion. The transcript of the first statement shows that Detective Headley asked Sorah questions to ascertain what happened and who shot the victim, but he did not make any type of threats or promises of leniency to Sorah. Furthermore, during the first statement, the defendant never indicated that he did not want to answer questions or that he wished to end the interrogation. Because there is no proof that the first statement was coerced, the second statement will not be suppressed on that basis.

The defendant argues, however, that the second statement was not knowing and voluntary in light of the totality of circumstances surrounding his condition. Therefore, he argues, the second statement must be suppressed. The test to determine whether a statement is voluntary is "whether [it] is the 'product of an essentially free and unconstrained choice by its maker,' or whether the maker's will 'has been overborne and his capacity for self-determination critically impaired'." *Yeatts v. Commonwealth*, 242 Va. 121, 130, *cert. denied*, 112 S. Ct. 1500 (1991) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)). Courts consider the "totality of all the surrounding circumstances" in making such a determination. *Id.*

The "characteristics of the accused" are part of the totality of circumstances; these include his "personal characteristics … including his intelligence, education, prior experience with police, use of drugs or alcohol, emotional or mental disability, and the deprivation of physical comforts." *Terrell v. Commonwealth*, 12 Va. App. 285, 290-91 (1991). However, the defendant's mental condition alone is not dispositive; unless there is "evidence of coercive police activity," there can be no finding that the statement given was involuntary. *Commonwealth v. Peterson*, 15 Va. App. 486, 488 (1992). Although:

[t]he amount of coercion necessary to trigger the due process clause may be lower if the defendant's ability to withstand the coercion is reduced by intoxication, drugs, or pain ... *some* level of coercive police activity must occur before a statement or confession can be said to be involuntary.

*Peterson*, 15 Va. App. at 488. In *Peterson*, the court affirmed suppression of the defendant's statements because there was evidence that he "was in pain, his vision blurred, and he was unable to understand 'everything that was going on around' him as a result of injuries he suffered when he was apprehended by the police. Furthermore, he had ingested cocaine ... was having problems breathing, having chest pains, and connected to a heart monitor in an ambulance en route to the hospital when the police questioned him." 15 Va. App. at 488. In light of all these factors, the court decided that the defendant's will was overborne by the officers' continued questioning and that Peterson's statements should be suppressed.

In this case, however, the tape recording of the second statement shows that the defendant was not incapacitated and understood fully what was happening to him. It is true that Sorah suffered from an upset stomach and was visibly disturbed; nevertheless, it is clear he was aware of his surroundings. Although Sorah claims he drank eighteen to twenty beers earlier that day, Headley did not smell alcohol on Sorah; nor did he discern anything in Sorah's behavior which would suggest that Sorah was intoxicated or was unable to appreciate what was occurring.[3] Furthermore, the transcript of the second statement gives no indication that Sorah was unable to understand or answer Headley's questions. As with the first statement, there is no evidence during the second statement that Detective Headley engaged in any coercive behavior.

Because the evidence is insufficient to support Sorah's claim of coercion so as to render his second statement involuntary or unknowing, I deny Sorah's motion to suppress the second statement made to the police.

### Order

On November 1, 1996, the Commonwealth's Attorney, the Defendant, Jonathan Sorah, and Patrick Anderson, counsel for the Defendant, appeared before this Court. The Defendant is indicted for the felonies of murder, Count

---

[3] For example, Sorah's speech was not slurred, he was not unsteady or disoriented, and he demonstrated clarity of thought in his comprehension of and responses to Headley's questions.

I, and using a firearm in the commission of a felony, Count II, and he appeared while in custody.

This case came before this Court today for argument on the Defendant's motion to suppress statements made to the detective, which motion the Court, after hearing argument, took under advisement. The Court upon reviewing this motion granted to suppress the first statement which the Defendant gave before receiving his *Miranda* warnings and denied the motion to suppress as to the second statement made to the police.

The Defendant was remanded to the custody of the sheriff.