# CIRCUIT COURT OF THE CITY OF RICHMOND

In re Rakira M. Cooper-Loney,
an infant

March 13, 2001

Case No. HN-2332-A

BY JUDGE RANDALL G. JOHNSON

In this appeal from the Juvenile and Domestic Relations District Court of the City of Richmond, the court must decide whether to allow a putative father to maintain a proceeding to determine parentage, including the possible ordering of genetic tests, even though he previously acknowledged paternity in writing. A hearing limited to that question was held on March 2, 2001.

Rakira Mondrea Cooper-Loney was born on July 8, 1999, at Bon Secours Memorial Regional Medical Center in Mechanicsville. On the same day and also at Bon Secours, Raphael Octavian Loney, Rakira's putative father, and Shaketa Mondrea Cooper, Rakira's mother, signed a two-page written document titled "Acknowledgment of Paternity, Virginia Department of Health/Division of Vital Records." The document ended with the following statement:

> We, being duly sworn, affirm that we are the biological parents of the child named above, we have read and have been provided with an oral description of the rights and responsibilities statement provided in Part V of this document, and we request that the father's information be shown on this child's birth certificate and that the child's name be listed on the birth certificate as shown below.

On September 26, 2000, Loney filed a petition in the juvenile court "for a determination of paternity of Rakira Mondrea Cooper-Loney, pursuant to Va. Code Section 20-49.1[] et seq." On December 18, 2000, the petition was dismissed. This appeal followed.

Prior to 1992, Va. Code § 20-49.1 provided:

A. The parent and child relationship between a child and a woman may be established prima facie by proof of her having given birth to the child, or as otherwise provided in this chapter.

B. The parent and child relationship between a child and a man may be established by a written statement of the father and mother made under oath acknowledging paternity or subsequent genetic blood testing which affirms at least a 98 percent probability of paternity. Such statement or blood test result shall have the same legal effect as a judgment entered pursuant to § 20-49.8. In the absence of such acknowledgment or if the probability of paternity is less than 98 percent, such relationship may be established as otherwise provided in this chapter. Written acknowledgments of paternity made under oath by the father and mother prior to July 1, 1990, shall have the same legal effect as a judgment entered pursuant to § 20-49.8.

C. The parent and child relationship between a child and an adoptive parent may be established by proof of lawful adoption.

In 1992, the statute was amended by replacing "genetic blood testing" in subsection (B) with "scientifically reliable genetic tests, including blood tests." In *Dunbar v. Hogan*, 16 Va. App. 653, 432 S.E.2d 16 (1993), which was decided under the statute as it existed before the 1992 amendment, the Court of Appeals held that a putative father who signed a written acknowledgment of paternity was not precluded from contesting paternity in a subsequent judicial proceeding:

The drafters of former Code § 20-49.1 adopted the provision that a sworn statement of paternity or the ninety-eight percent blood test results would have the same legal effect as a judgment of paternity in order to alleviate the backlog of child support cases by providing a means to expedite the paternity/support proceedings where fathers willingly acknowledged paternity, but contested support, custody, visitation or guardianship issues. *See* 1990 General Assembly, Summary of Legislative Proposal Priority 1, Department of Social Services, Legislative Draft File, House Bill 961 (1990). The statute was not intended to preclude, and did not preclude, a father from adjudicating paternity where there had been no prior adjudication, even when the blood test results showed a ninety-eight percent probability of paternity or where he may have acknowledged paternity under oath. The statute, as amended in 1990, was intended to permit parties who acknowledged paternity, or who did not dispute paternity

and the blood test results showed a ninety-eight percent probability of paternity, to have support, visitation, and custody determined without having to fully litigate paternity.

An order of support or custody or visitation entered pursuant to Code § 20-49.8 which is based on the sworn Declaration of Paternity or on the blood test results would, based on the provisions of former Code § 20-49.1, be *res judicata* or would collaterally estop the parties from relitigating the fact and issue of paternity. However, where no judgment or order establishing parentage pursuant to Code § 20-49.8 has been entered based on the sworn Declaration of Paternity or on the blood test results, there has been no judicial determination of the fact or issue of paternity and the putative father may contest that issue in the support proceedings.

16 Va. App. at 659. *See also Commonwealth, Dept. of Social Services v. Flaneary*, 22 Va. App. 293, 301, 469 S.E.2d 79 (1996); *Alexander v. Morgan*, 19 Va. App. 538, 540, 452 S.E.2d 370 (1995).

Subsection (B) was again amended in 1997 and 1998. It now provides as follows:

B. The parent and child relationship between a child and a man may be established by:

1. Scientifically reliable genetic tests, including blood tests, which affirm at least a ninety-eight percent probability of paternity. Such genetic test results shall have the same legal effect as a judgment entered pursuant to § 20-49.8.

2. A voluntary written statement of the father and mother made under oath acknowledging paternity and confirming that prior to signing the acknowledgment, the parties were provided with a written and oral description of the rights and responsibilities of acknowledging paternity and the consequences arising from a signed acknowledgment, including the right to rescind. The acknowledgement may be rescinded by either party within sixty days from the date on which it was signed unless an administrative or judicial order relating to the child in an action to which the party seeking rescission was a party is entered prior to the rescission. A written statement shall have the same legal effect as a judgment entered pursuant to § 20-49.8 and shall be binding and conclusive unless, in a subsequent judicial proceeding, the person challenging the statement establishes that the statement resulted from fraud,

duress or a material mistake of fact. In any subsequent proceeding in which a statement acknowledging paternity is subject to challenge, the legal responsibilities of any person signing it shall not be suspended during the pendency of the proceeding, except for good cause shown. Written acknowledgments of paternity made under oath by the father and mother prior to July 1, 1990, shall have the same legal effect as a judgment entered pursuant to § 20-49.8.

3. In the absence of such acknowledgment or if the probability of paternity is less than ninety-eight percent, such relationship may be established as otherwise provided in this chapter.

The issue now is whether the holding of *Dunbar v. Hogan* has been abrogated by the language, added in 1997, that a written acknowledgment "shall be binding and conclusive unless, in a subsequent judicial proceeding, the person challenging the statement establishes that the statement resulted from fraud, duress or a material mistake of fact." The Virginia Department of Social Services, citing the "binding and conclusive" language of the current statute, and also the current statute's provision limiting to sixty days a party's right to rescind, argues that *Dunbar's* holding has been abrogated. Loney takes the opposite view. The court concludes that *Dunbar's* holding is still sound.

In *Moore v. Gillis*, 239 Va. 239, 389 S.E.2d 453 (1990), the Supreme Court observed:

If statutory language "is clear and unambiguous, there is no need for construction by the court: the plain meaning and intent of the enactment will be given it."

239 Va. at 241 (*quoting Brown v. Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84 (1985)).

The language in § 20-49.1(B) is clear and unambiguous. It says that when there is a written acknowledgment of paternity, such acknowledgment shall be binding and conclusive *unless* the person challenging the statement establishes that it resulted from fraud, duress, or material mistake of fact *in a subsequent judicial proceeding*. In the case at bar, Loney signed a written acknowledgment of paternity. He now seeks to show, *in this subsequent judicial proceeding*, that the acknowledgment resulted from fraud, duress, or a material mistake of fact. Under the plain terms of the statute, he must be allowed to do so.

The Department of Social Services argues that the present proceeding cannot go forward because Loney has not already shown fraud, duress, or a material mistake of fact. There is no requirement, however, that such a showing be made at this stage of the proceedings. Indeed, judicial proceedings are almost always commenced with allegations, not proof. A personal injury plaintiff does not have to establish defendant's negligence in order to file suit. He or she only has to allege such negligence. Similarly, a person who claims a breach of contract need only allege the breach in order to file suit. He or she does not have to establish it. The same is true with nearly every other judicial proceeding. Only at trial do facts have to be established in order for the moving party to receive the relief requested. There is nothing in § 20-49.1 to indicate that the General Assembly intended the "subsequent judicial proceeding" provided for in that statute to be any different.

In his memorandum of law in support of his petition, Loney alleges that he signed the written acknowledgment of paternity "under the material mistake that he was the father of the child." He also alleges that he signed it because "he felt pressured to do so, because the respondent's family was in the room staring at him, and none of his family was present." Although the court heard testimony from Loney at the hearing on March 2, such testimony was unnecessary. The allegations of duress and material mistake of fact are all that is necessary. Since they have been made, he is entitled to proceed with this action under Va. Code § 20-49.2.

At the March 2 hearing, Loney's counsel also asked the court to order genetic tests. In looking through the file, however, there does not appear to be a formal motion for such tests or a sworn statement denying paternity, both of which are required by § 20-49.3(A). Once such a motion and statement are filed, and assuming that the Department and/or Shateka Cooper object to such tests being ordered, another hearing is probably needed. Also, § 20-49.2 provides that the child may be made a party and that the determination of the court shall not be binding on any person who is not a party. The style of the case as it came from juvenile court appears to be "Commonwealth of Virginia, In re Rakira M. Cooper-Loney." Counsel should take the necessary steps to have before the court all parties they believe are appropriate.