COURT OF APPEALS OF VIRGINIA


Present:    Judges Elder, Bumgardner and Frank
Argued at Richmond, Virginia


WILLIAM FRANK MARTIN, JR.
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1204-04-2                  JUDGE RUDOLPH BUMGARDNER, III
                                                        OCTOBER 11, 2005
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                              Arthur W. Sinclair, Judge Designate

            Francis McQ. Lawrence (Rhonda Quagliana; St. John, Bowling &
            Lawrence, LLP, on briefs) for appellant.

            Leah A. Darron, Assistant Attorney General (Judith Williams
            Jagdmann, Attorney General, on brief), for appellee.


        The trial court convicted William Frank Martin, Jr. of carnal knowledge of an inmate,

Code § 18.2-64.2.  He appeals the denial of his motion to suppress his statement to police and the

finding that the evidence was sufficient to convict.  Finding no error, we affirm.

        On appeal, we view the evidence and the reasonable inferences fairly deducible

therefrom in the light most favorable to the Commonwealth.  Commonwealth v. Hudson, 265

Va. 505, 514, 578 S.E.2d 781, 785, cert. denied, 540 U.S. 972 (2003).  The defendant was a

corrections officer at the Albemarle Regional Jail.  Around 4:30 a.m., the victim was working

alone in the jail laundry room.  The defendant made suggestive remarks and later assaulted her in

the storage closet.  He began by touching her all over both inside and outside her clothing.  He

inserted his finger and then his penis in her vagina.  He stopped when the victim told him she

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

was positive for Hepatitis B and C, but he warned her that she would lose her trustee status if she reported him.

A few hours after the incident, Corrections Officer Ruby Keffer observed the victim was shaking like a leaf and looked like she had been crying. The victim explained the defendant had assaulted her and then made a written complaint. Jail authorities and the police interviewed the victim, and a Sexual Assault Nurse Examiner examined her later that day. The nurse found one tear in the vagina and one laceration in the vaginal area. She did not feel it was likely that the laceration was self-induced.

Sergeant James Bond interviewed the defendant at 6:25 p.m. that evening at the Albemarle police department. He advised the defendant of his <u>Miranda</u> rights and obtained a signed waiver before beginning the interview. During the interview, the defendant agreed to let the police take his clothing for testing. He changed into a t-shirt and sweatpants that he retrieved from his car.

Detective Gloria Graves joined the interview. She clarified that the <u>Miranda</u> warnings still applied. The defendant acknowledged that he understood his rights, that he was free to go, and that he agreed to continue the interview. While the defendant was detained over five hours, the interview lasted one hour forty-seven minutes. During the interview the defendant never requested an attorney, attempted to terminate the interview, or indicated he was hungry or uncomfortable in any way. He was given cigarette and bathroom breaks and was offered liquids. He left the police station around 11:30 p.m.

The defendant submitted the videotape of the interview as the sole evidence supporting his motion to suppress. He maintained that his discomfort, fatigue, and "severe psychological strain" caused by police misconduct rendered his admissions involuntary. The trial court viewed the videotape and issued a letter opinion with detailed findings of fact that reviewed the

defendant's physical and psychological condition and the interrogation tactics used by the police. The trial court concluded the defendant's statement "was the product of an essentially free and unconstrained choice by him and that he was not overborne born [sic] by the police which impaired his ability to make a voluntary statement about his involvement in the matter." The trial court specifically found that the defendant did not display any signs of discomfort during the interview and that the police conduct did not render his admissions involuntary.

"Voluntariness is a question of law, subject to independent appellate review," <u>Midkiff v. Commonwealth</u>, 250 Va. 262, 268-69, 462 S.E.2d 112, 116 (1995), but "subsidiary factual determinations are entitled to a presumption of correctness," <u>Jenkins v. Commonwealth</u>, 244 Va. 445, 453-54, 423 S.E.2d 360, 366 (1992). Our review is to determine whether the evidence supports the trial court's finding of voluntariness but not to conduct a *de novo* determination of historical facts by viewing the videotape. <u>Commonwealth v. Hilliard</u>, 270 Va. 42, 50-51, 613 S.E.2d 579, 585 (2005); <u>Terrell v. Commonwealth</u>, 12 Va. App. 285, 290, 403 S.E.2d 387, 389-90 (1991).

"The test for voluntariness is whether the statement is the 'product of an essentially free and unconstrained choice by its maker,' or whether the maker's will 'has been overborne and his capacity for self-determination critically impaired.'" <u>Jenkins</u>, 244 Va. at 453-54, 423 S.E.2d at 366 (quoting <u>Culombe v. Connecticut</u>, 367 U.S. 568, 602 (1961)). We consider, in light of the totality of circumstances, the defendant's experience and background as well as the conduct of the police. <u>Midkiff</u>, 250 Va. at 268, 462 S.E.2d at 116. In assessing the defendant's condition we consider his "age, intelligence, mental and physical condition, background and experience with the criminal justice system . . . ." <u>Bottenfield v. Commonwealth</u>, 25 Va. App. 316, 323, 487 S.E.2d 883, 886 (1997). <u>See also</u> <u>Gray v. Commonwealth</u>, 233 Va. 313, 324, 356 S.E.2d 157, 163 (1987).

While "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary,'" Colorado v. Connelly, 479 U.S. 157, 167 (1986), "the voluntariness of a confession cannot be equated to the absolute absence of intimidation," United States v. Wertz, 625 F.2d 1128, 1134 (4th Cir. 1980). See also Peterson v. Commonwealth, 15 Va. App. 486, 488, 424 S.E.2d 722, 723 (1992). We must consider "the interrogation techniques employed, including evidence of trickery and deceit, psychological pressure, threats or promises of leniency, and duration and circumstances of the interrogation." Terrell, 12 Va. App. at 291, 403 S.E.2d at 390.

The record supports the trial court's finding that the defendant's admissions were voluntarily made. The twenty-eight-year-old defendant had a high school diploma; received the grade of A in a criminal justice class he took; and was employed as a corrections officer. He acknowledged he was not under arrest, was free to leave, understood his Miranda rights, and voluntarily agreed to speak with the officers.

The defendant was not under the influence of alcohol or drugs. He wore his own clothing and never indicated any discomfort. He was provided with breaks and something to drink. He never asked for food, and never stated he was uncomfortable, hungry, or tired at any point during the interrogation.

While the officers used several interviewing techniques, the evidence does not support the defendant's claim that they overstepped their bounds and overwhelmed him. The officers did not lie, use trickery or deceit. They did not make any promises or physically overpower the defendant. Indeed, they insisted that the defendant "should not admit to anything that was not the truth." Credible evidence supports the trial court's finding that the defendant's statement was freely and voluntarily made.

The defendant also maintains the evidence was insufficient to convict. He stresses that the victim made inconsistent statements that make her testimony not credible. Prior inconsistent statements are a factor for the trial court to consider in determining the witness' credibility but do not automatically render her trial testimony incredible. Fordham v. Commonwealth, 13 Va. App. 235, 240, 409 S.E.2d 829, 832 (1991). The trial court resolved inconsistencies in the victim's testimony and found her to be a credible witness. Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

A sex offense "may be sustained solely upon the testimony of the victim." Ashby v. Commonwealth, 33 Va. App. 540, 548-49, 535 S.E.2d 182, 187 (2000). However, in this case this victim's testimony is corroborated by the description of the victim's demeanor shortly after the incident, by the nurse's explanation of the victim's physical injuries, and by the defendant's admissions. He acknowledged he put the victim's hand on his penis, he rubbed his penis against her buttocks, inserted his finger in her vagina, and he might have inserted his penis as well. The defendant himself admitted most of the elements of the offense. Credible evidence supports the trial court's conclusion that the evidence proved the offense. Accordingly, we affirm the conviction.

                                                                                                    Affirmed.