COURT OF APPEALS OF VIRGINIA

Present:  Judges Elder, Bray and Fitzpatrick
Argued at Salem, Virginia

CHRISTOPHER D. BOTTENFIELD
                                            OPINION BY
v.      Record No. 0921-96-3     JUDGE JOHANNA L. FITZPATRICK
                                            JULY 29, 1997
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Thomas H. Wood, Judge

Roland S. Carlton, Jr., for appellant.
Daniel J. Monroe, Assistant Attorney General
(James S. Gilmore, III, Attorney General, on
brief), for appellee.


Christopher D. Bottenfield (appellant) was convicted in a jury trial of aggravated sexual battery in violation of Code § 18.2-67.3 and of taking indecent liberties with a minor in violation of Code § 18.2-370.  On appeal, appellant contends that the trial court erred in:  (1) overruling his motion to suppress his confession; (2) preventing him from arguing the absence of <u>Miranda</u> warnings to the jury; and (3) allowing the Commonwealth to amend the indictment.  For the following reasons, we affirm.

I.  BACKGROUND

On August 25, 1995, Sergeant Dwight Wood (Wood) of the Augusta County Sheriff's Department asked Christopher D. Bottenfield (appellant) to come to the Sheriff's Department to discuss allegations of sexual abuse made by the victim, Kelly Bottenfield (Kelly).  Before the interview began, Wood told appellant that no charges were pending against him and that he did not have to discuss the allegations.  However, appellant

agreed to meet and talk with Wood regarding the allegations.

The interview, which occurred the following day, lasted approximately thirty-four minutes and was not recorded. Wood realized at the beginning of the interview that appellant was "slow," and he phrased his questions to appellant accordingly. Following the question and answer part of the interview, Wood made a list of short statements (a "very, very simple" statement) relating to the questions and answers. He went over these statements several times with appellant. Appellant signed the bottom of the page, and the interview terminated. At no time, either before or during the interview, were <u>Miranda</u> warnings given to appellant. After the interview, Wood wrote down from memory his questions and appellant's responses.

On September 1, 1995, appellant was arrested and on October 23, 1995, he was indicted for attempted rape, sodomy, aggravated sexual battery, and taking indecent liberties. Appellant filed a motion to suppress statements made during the August 26, 1995 interview on the basis that this confession was involuntary. On March 18, 1996, the suppression hearing was held, and the trial court overruled appellant's motion, finding as follows:

> [W]e've got a case here where [] an adult has been charged with engaging in sexual activity with a child under the age of thirteen years. And [] an experienced police investigator calls him on the phone and asks him if he will voluntarily come to the Sheriff's Department. This individual then drives his own vehicle . . . to the Augusta County Sheriff's Department.
>
> . . . And the [] investigator talks to him

and determines that he is slow.  But he also determines that he has been employed for seven years and that he does drive.  He asks him some questions.  I haven't seen the questions.  I haven't seen the statement.  I don't know what he asked him.  I don't know what the answers are.  I don't know whether the man signed it.  The police officer, again, of twenty some years, believed this man understood what he was admitting to.  And, if that's the case, gentlemen, the statement was voluntary.

. . . And if the interrogation is not custodial, the Miranda . . . presumption doesn't apply.  And this is not a custodial interrogation.

Wood testified at the jury trial that at the time of the August 26, 1995 interview, no arrest warrants or charges were pending against appellant.  Wood stated that appellant was free to leave at any time and that appellant was never told that he was under arrest or going to be charged.  Appellant was not searched, frisked, or placed in handcuffs.  Wood further testified that, although he realized appellant was "slow," appellant was able to carry on an intelligent conversation.

Dr. Joseph Conley, Jr. (Dr. Conley) testified on behalf of appellant and was qualified as an expert in neuropsychology.  Prior to trial, he interviewed and examined appellant, and determined that his IQ was sixty-one, which is, according to Dr. Conley, in the mentally retarded range.  He testified at trial regarding appellant's intelligence, reading ability, reading comprehension, spelling ability, and mathematics ability, and concluded that appellant was unable to comprehend the terminology

3

used in the confession he signed.

In admitting appellant's statement into evidence, the court stated that:

> [T]he jury is . . . not gonna hear evidence concerning the . . . <u>admissibility</u> of this confession.  It's not gonna hear evidence concerning whether this confession was voluntary, as that . . . term is a legal term . . . . But, certainly, this man's mental capability and his ability to understand words and whatever -- certainly, that is admissible, because the jury is gonna have to determine what <u>weight</u> to give to this confession; not being limited in any respect with that regard.

(Emphasis added).

At the conclusion of the Commonwealth's case, appellant moved to strike the Commonwealth's evidence.  The motion was overruled.  The Commonwealth then requested to change the code section of the taking indecent liberties charge, and the court allowed the amendment.  The court specifically found that "the amendments are technical in nature; they don't change the nature of the charge in either . . . situation."

## II.  MOTION TO SUPPRESS

Appellant argued at the pretrial suppression hearing that the confession obtained during his questioning on August 26, 1995 was "not voluntary as is required by the Due Process Clause of the Fifth and Fourteenth Amendments."  On appeal, appellant contends that the trial court erred in finding that his confession was voluntary, because the trial court failed to independently evaluate the circumstances surrounding his

4

confession.  Although we agree that the trial court erred when it apparently relied primarily on Wood's determination that appellant's statement was voluntary, we also conclude, based on our independent review of the record, that appellant's confession was voluntary.

The Commonwealth has the burden to prove, by a preponderance of the evidence, that a defendant's confession was freely and voluntarily given.  See Wilson v. Commonwealth, 13 Va. App. 549, 554, 413 S.E.2d 655, 658 (1992); Campbell v. Commonwealth, 194 Va. 825, 830, 75 S.E.2d 468, 471 (1953).  In determining whether a statement or a confession was voluntary, the trial court must decide whether the statement was the "product of an essentially free and unconstrained choice by its maker," or whether the maker's will "has been overborne and his capacity for self-determination critically impaired." Commonwealth v. Peterson, 15 Va. App. 486, 487-88, 424 S.E.2d 722, 723 (1992) (citations omitted).  In so deciding, the trial court must look to "the totality of all the surrounding circumstances."  Id. (emphasis added).  The court must consider the defendant's age, intelligence, mental and physical condition, background and experience with the criminal justice system, the conduct of the police, and the circumstances of the interview.  See id.; Morris v. Commonwealth, 17 Va. App. 575, 579, 439 S.E.2d 867, 870 (1994).  Because only state action may violate a criminal defendant's due process rights, "coercive police activity is a

necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Colorado v. Connelly, 479 U.S. 157, 167, 107 S. Ct. 515, 522 (1986).

"On appeal, we consider the entire record in determining whether the trial court properly denied appellant's motion to suppress." Patterson v. Commonwealth, 17 Va. App. 644, 648, 440 S.E.2d 412, 415 (1994) (citing DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 543 (1987), cert. denied, 488 U.S. 985 (1988)). "[T]he standard for appellate review of whether a confession is voluntary [] requir[es] an independent examination of the totality of the circumstances . . . ." Wilson, 13 Va. App. at 551, 413 S.E.2d at 656; see also Midkiff v. Commonwealth, 250 Va. 262, 268-69, 462 S.E.2d 112, 116 (1995) (voluntariness of a confession "is a question of law, subject to independent appellate review").

"The defendant's relatively low intelligence and defective education are factors which should be weighed, along with all surrounding circumstances, in determining whether . . . his confession was voluntary." Simpson v. Commonwealth, 227 Va. 557, 564, 318 S.E.2d 386, 390 (1984) (citation omitted); see also Connelly, 479 U.S. at 165, 107 S. Ct. at 520-21 (stating that "mental condition is surely relevant to an individual's susceptibility to police coercion). However, "a defendant's mental condition, by itself and apart from its relation to

6

official coercion, should [never] dispose of the inquiry into constitutional 'voluntariness.'" Connelly, 479 U.S. at 164, 107 S. Ct. at 520.

Indeed, in Colorado v. Connelly, the United States Supreme Court recognized that a defendant's mental condition is "surely relevant to an individual's susceptibility to police coercion." Connelly, 479 U.S. at 165, 107 S. Ct. at 521 (holding that defendant's statement was voluntary, even though defendant argued that he suffered from chronic schizophrenia and command hallucinations that interfered with his volitional abilities). However, the Court also determined that the "mere examination of the confessant's state of mind can never conclude the due process inquiry." Id. In its analysis of a defendant's ability to make a voluntary confession, the Court reasoned that, "[a]bsent police conduct causally related to the confession there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." The Court ultimately held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Id. at 167, 107 S. Ct. at 522 (emphasis added). In relying on the Supreme Court's holding in Connelly, we held that "[t]he amount of coercion necessary to trigger the due process clause may be lower if the defendant's ability to withstand the coercion is reduced . . . but some level of coercive police activity must occur

7

before a statement or confession can be said to be involuntary."

Peterson, 15 Va. App. at 488, 424 S.E.2d at 723.

We first hold that the trial court's ruling that appellant's confession was voluntary was erroneous because the trial court did not base its conclusion on an analysis of the totality of the circumstances. In its ruling, the trial court stated:

> [Sergeant Wood] asked [appellant] some questions. I haven't seen the questions. I haven't seen the statement. I don't know what he asked him. I don't know what the answers are. I don't know whether the man signed it. The police officer, again, of twenty some years, believed this man understood the questions that he was being asked; he understood what he was admitting to. And, if that's the case, gentlemen, the statement was voluntary.

(Emphasis added). The trial court apparently adopted Wood's determination that appellant "understood what he was admitting to." Because the trial court did not independently consider the circumstances relevant to the issue of voluntariness, its decision to deny appellant's motion to suppress his confession was based upon an erroneous predicate.

However, based upon our review of the entire record adduced, we hold that appellant's oral confession to Wood was voluntary. Appellant was asked by Wood to come to the Sheriff's Department to discuss the allegations against him, and he voluntarily drove himself to the Sheriff's Department for the interview. Wood told appellant that no charges were pending against him and that he did not have to discuss the allegations or speak further. Wood

8

testified that the door to his office was open during the entire interview and that appellant was free to leave at any time. The first part of the interview consisted of an oral discussion of the victim's allegations against appellant. Wood phrased his questions simply and made notes of appellant's oral responses. Wood testified that he noticed that appellant was "limited in education" and that he had "to ask [his] questions sometimes more than once and in different ways, for [appellant] to understand them." During this stage of the interview, appellant stated that, among other things, he had made the victim touch and put her mouth on his penis and that he had touched and placed his finger inside the victim's vagina.[1]

---

[1] At appellant's trial, Wood testified that he had made notes of his questions and appellant's answers during the oral stage of the interview. He then read these notes into evidence:

> Okay. As I said, this interview was on the 26th of August, and in my office at approximately 7:30 P.M. "[The victim] said you have touched her and made her do some things that she didn't like." His answer, with no denial, "I've done some things." "[The victim] said you have--you took her clothes off, and yours." His answer, "Just one time." "[The victim] said you laid on top of her." His reply, "Yes, but I didn't do anything." My reply to that, "you didn't—you didn't have any clothes on or she. That's something that you shouldn't have done." His answer, "Yes, I guess so." "Kelly said you made her touch your penis. She called it your private. Also, that she put her mouth on your private." His answer, "Yes, but that's all." I asked him, "Do you think that's wrong?" His reply, "No, I know I shouldn't have done that." I asked--I said, "[Appellant], what do you call private?" And then I detailed that further

9

The evidence regarding this stage of the interview does not indicate that appellant's oral confession was coerced in any way by Wood. In addition, Wood did not use complex questions or other tactics aimed at exploiting appellant's disability in order to compel an unintentional confession. On the contrary, Wood testified that he framed his questions simply and repeated them several times when it appeared that appellant did not understand.

Here, appellant identifies no coercive tactics used by the police to overbear his will nor any circumstances that caused him to be "especially susceptible." Appellant's low IQ standing alone is insufficient to outweigh all other considerations and to render the statement involuntary. See also Goodwin v.

---

"[the victim's]". His answer, "Her doodle." I asked, "Did you touch her doodle?" His answer, "One time." I asked, "What did you touch her doodle with?" His reply, "Finger." I asked, "Did you put your finger inside?" His reply, "Just a little. I shouldn't have done that." And I replied "You're right." "You touched her with your penis, too," my question. His answer, "Yes, but not much." Kelly said your private felt sticky. His answer--or question, "Did she get you off?" And then I further asked, "Did you come?" His answer to that, "I did get off, but not in her; not on her." I asked [appellant], "Why did you do these things?" His reply was he didn't know. I asked him "how long have you done this?" His answer, "Just a little while." I said, No, how long? How many times?" His answer to that, "Just that time." I asked him, "Are you sure?" His reply, "Yes." "[The victim] said that you've done this in your bedroom." His answer, "Yes." I asked, "Who else have you done this with?" And he said "Just her."

10

Commonwealth, 3 Va. App. 249, 349 S.E.2d 161 (1986) (holding that defendant's mental retardation and intoxication did not interfere with his ability to make a voluntary confession).

Appellant additionally contends that his confession was involuntary because he did not understand the written confession that he signed. We disagree that appellant's signature on the written confession amounted to a constitutional violation. The record indicates that after the oral portion of the interview, Wood drafted a confession containing eight statements. The record also indicates that the content of these written statements merely summarized appellant's oral responses to Wood's questions about his sexual activity with the victim.[2] Wood read each statement to appellant, and appellant signed the written confession. Appellant's expert, Dr. Conley, testified that appellant probably did not understand the content of this written confession because the eight statements were "drafted . . . at a higher level than that which . . . [appellant] was capable of comprehending." However, no evidence in the record impugned

---

[2] At trial, Wood read the written statement that appellant signed. It said:

> I have touched [the victim] in her privates
> with my finger. I touched Kelly with my
> penis. I touched her doodle with my penis.
> I had Kelly put her mouth on my penis. I had
> Kelly rub my penis. I did get off, but not
> on her. I had my clothes off and Kelly's
> too. I realize what I did was wrong.

Under his signature, appellant wrote, "I went to ten grade."

11

appellant's ability to respond accurately to Wood's oral questions.  Because the content of the written confession did not vary from the content of appellant's oral confession, which was the "product of an essentially free and unconstrained choice," we conclude that appellant's due process rights were not violated when Sergeant Wood had him sign the written confession.

Accordingly, the record establishes that appellant "was fully cognizant of his situation, was in control of his cognitive powers, understood the circumstances, and was exercising his free will when he admitted his involvement in the crime[s] . . . the circumstances . . . were not so compulsive or coercive that [appellant] was prevented from weighing his options, understanding the situation, and making a knowing and calculated decision to confess to his involvement."  See Wilson, 13 Va. App. at 554, 413 S.E.2d at 658.  The standard used by the trial court when ruling on the voluntariness issue, while erroneous, worked no injustice.  Upon review of the entire record, we hold that the confession was voluntarily given.

### III.  MIRANDA WARNINGS

Next, appellant argues that the trial court erred in admitting the confession despite the absence of Miranda warnings, and that the issue of the absence of the warnings should have been argued to the jury.

"'[T]he Supreme Court has made it clear that the prescribed warnings must be given before statements are taken from suspects

only where there is custodial interrogation as thus defined in Miranda: "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."'" Novak v. Commonwealth, 20 Va. App. 373, 384-85, 457 S.E.2d 402, 407 (1995) (quoting Coleman v. Commonwealth, 226 Va. 31, 46, 307 S.E.2d 864, 872 (1983), cert. denied, 465 U.S. 1109 (1984)). Whether a detention amounts to a custodial interrogation for purposes of Miranda depends on all of the circumstances surrounding the detention. See Cherry v. Commonwealth, 14 Va. App. 135, 140, 415 S.E.2d 242, 244 (1992). Factors we may consider include, inter alia, whether Wood informed appellant that he was not under arrest, whether appellant knew or had been apprised of the nature of the investigation, and the point at which appellant became the focus of the investigation. See Wass v. Commonwealth, 5 Va. App. 27, 32-34, 369 S.E.2d 836, 839-40 (1987); Cherry, 14 Va. App. at 139, 415 S.E.2d at 244.

On appeal, we must consider the evidence in the light most favorable to the Commonwealth, the prevailing party below. Novak, 20 Va. App. at 385, 457 S.E.2d at 408. Additionally, in our analysis, we must view the situation from the vantage point of a "reasonable man in the suspect's position." Id.

The record demonstrates that appellant's statements were made during an informal interview that was conducted as part of

13

Wood's investigation.  <u>Miranda</u> does not apply to a police officer's general questioning in the course of the fact-finding process.  <u>See</u> <u>Pruett v. Commonwealth</u>, 232 Va. 266, 271, 351 S.E.2d 1, 4 (1986), <u>cert. denied</u>, 495 U.S. 940 (1990).  Wood informed appellant that no charges were pending against him, that he was not under arrest, and he informed appellant of the nature of the allegations.  The record also makes clear that appellant's freedom was not constrained in any way during the interview.  We hold that the trial court correctly found that appellant was not in custody at the time of the confession.  Accordingly, no <u>Miranda</u> warnings were required.  <u>See</u> <u>Oregon v. Mathiason</u>, 429 U.S. 492 (1977); <u>Addison v. Commonwealth</u>, 224 Va. 713, 299 S.E.2d 521 (1983).

Appellant further contends that, in order to support his theory of voluntariness, he should have been allowed to argue to the jury the fact that he received no <u>Miranda</u> warnings.  However, appellant cites no authority to support this argument.  The issue of whether <u>Miranda</u> rights were required is a question of law, properly determined by the trial court and not, as appellant contends, a question of fact that could be considered by a jury in determining the weight to be given to the confession.

IV.  AMENDMENT OF THE INDICTMENT

Lastly, appellant argues that the trial court erred in allowing the Commonwealth to amend the indictment at the close of its case-in-chief, because the amendment changed the nature and

14

character of the offense charged.  The Commonwealth was permitted to amend the indictment charging appellant with taking indecent liberties from Code § 18.2-370.1, which requires proving a supervisory relationship between the accused and the victim, to Code § 18.2-370, which does not contain such a requirement.

> Code § 19.2-231 states in pertinent part as follows:
>             If there be any defect in form in any indictment . . . or if there shall appear to be any variance between the allegations therein and the evidence offered in proof thereof, the court may permit amendment of such indictment . . . at any time before the jury returns a verdict or the court finds the accused guilty or not guilty, provided the amendment does not change the nature or character of the offense charged . . . . If the court finds that such amendment operates as a surprise to the accused, he shall be entitled, upon request, to a continuance of the case for a reasonable time.

Additionally, "Rule 3A:6 provides that an error in the citation of the statute which defines the offense . . . shall not be ground for dismissal of an indictment . . . 'unless the court finds that the error or omission prejudiced the accused in preparing his defense.'" George v. Commonwealth, 242 Va. 264, 281, 411 S.E.2d 12, 22 (1991), cert. denied, 503 U.S. 973 (1992) (quoting Rule 3A:6).

Accordingly, we hold that the trial court did not err in allowing the amendment.  Notably, appellant did not allege surprise at the time of the amendment or request a continuance of the case.  Code § 18.2-370 is the same offense as Code § 18.2-370.1, except the former does not require proof that the

offender was in a custodial or supervisory relationship with the victim. The amendment did not add elements to the charges or otherwise jeopardize appellant's opportunity to adequately defend himself. Finally, the original indictment gave appellant adequate notice of the essential elements of the charge against him. See George, 242 Va. at 280-81, 411 S.E.2d at 22 (no error in permitting the Commonwealth, after resting its case, to amend the indictment to correct a wrong code section, where amendment did not prejudice the accused in preparing his defense).

Finding no reversible error, we affirm.

Affirmed.