# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

v.

Sandra S. Staton

November 20, 1998

Case No. (Criminal) 98-277

BY JUDGE EDWARD L. HOGSHIRE

The Commonwealth has initiated charges against the Defendant, Sandra Staton, for embezzlement based in part on information obtained during an interview with Detective Hudson, an officer of the Charlottesville police department. The Defendant alleges that the Defendant's statements were obtained by Detective Hudson in violation of her *Miranda* rights and has therefore moved to suppress the evidence. After reviewing the briefs of the parties and considering evidence presented at the hearing conducted on October 9, 1998, the Court denies the motion for the reasons more fully described below.

### Statement of Facts

The Charlottesville police had reason to suspect the Defendant of embezzling funds from her former employer. Rather than arrest her, however, the police telephoned the Defendant and sought to arrange a mutually convenient time for her to come to the police station for questioning. During that conversation, the Defendant agreed to come in for questioning two days later during the afternoon. At that time, the Defendant came to the station by herself (i.e., without being escorted by the police) and was ultimately escorted to an interrogation room. The evidence conflicts as to how long she was at the station before the interview began, but it appears that the range is between ten and thirty minutes. Detective Hudson then led her into the interview room, brought her some coffee, and informed her that she was not under arrest at this time. The interview was being recorded by a hidden video camera. Detective

Hudson claims that he informed the Defendant that she was free to go at any time, but the statement was made before the taping, and the Defendant does not recall any such statement. A review of the tape was presented in court and indicates that Detective Hudson questioned the Defendant in a calm, conversational tone and did not appear to be threatening or intimidating.

## Question Presented

Was Detective Hudson's interrogation of Ms. Staton custodial in nature so as to trigger Fifth Amendment protections?

## Discussion of Authorities

*Miranda* warnings are required whenever a person is subjected to "custodial interrogation," but they do not apply to non-custodial interviews. *See, Davis v. Allsbrooks*, 778 F.2d 168 (4th Cir. 1985). Given the fact that both sides agree that Detective Hudson never advised Ms. Staton of her *Miranda* rights, the only question before the Court is whether the interview was custodial in nature.

Several Virginia cases offer guidance in this area. The Court of Appeals has invoked a totality of circumstances test, which considers a host of factors. *Wass v. Commonwealth*, 5 Va. App. 27 (1987). The *Wass* factors include: (1) whether the suspect is questioned in familiar or neutral surroundings; (2) the number of officers present; (3) the degree of physical restraint; (4) the duration and character of the interrogation; (5) whether or when probable cause to arrest exists; (6) when the suspect becomes the focus of the investigation; (7) the language used to summon the individual; (8) the extent to which he or she is confronted with evidence of guilt; (9) the physical surroundings of the interrogation; and (10) the duration of the detention and the degree of pressure applied to detain the individual. *Id.* at 32-33.

Courts considering whether or not an interview is custodial invariably consider the totality of the circumstances, regardless of whether they expressly engage in an analysis of the *Wass* factors. Several Virginia cases with facts similar to the ones presently before the Court have found the interrogations to be non-custodial.

For example, in *Burket v. Commonwealth*, 248 Va. 596 (1994), the Virginia Supreme Court found the interview to be non-custodial despite the fact that the police went to the suspect's house, brought him to the police station in a police cruiser, and lied to him during the course of the interrogation. The Court noted, however, that the police advised the suspect

that he was not under arrest and was free to leave, they did not handcuff or restrain the suspect, and they interviewed him in a closed room. *Id.* at 602-03. The interrogation apparently lasted longer than an hour, and the defendant stated at one point that "I'm gonna need a lawyer." *Id.* at 603. Despite these facts, the officers did not advise the defendant of his *Miranda* rights until they decided to frisk him and place him into custody. Citing *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977), the Court observed:

> Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was that sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited.

*Id.* at 604-05. Finding that the defendant was not deprived of freedom of movement until he was frisked and read his rights, the Court held the initial portion of the interview was non-custodial.

Looking at the facts of the case at bar, clearly Ms. Staton's claim for Fifth Amendment protection is less compelling than the defendant's in *Burket*. She was not taken from her home in a police cruiser or lied to during the course of the interrogation. She never made any requests for an attorney during the interview. Furthermore, she had two days to consider the implications of her decision to go to the police station, and once there, her interview with Detective Hudson was friendly and conversational. Like the defendant in *Burket*, she was advised that she was not under arrest, was not handcuffed or restrained, and was interviewed in a room with the door closed.

Two other cases have a bearing on the Court's decision. In *Bottonfield v. Commonwealth*, 25 Va. App. 316 (1997), the defendant came to the police station a day after being requested to do so, was interviewed for approximately 34 minutes, was not searched, frisked, or handcuffed, and was told that no charges were pending against him. The Court of Appeals found that the officer engaged in no coercive tactics in interviewing the defendant. *Id.* at 326-27. The only distinction between the facts of *Bottenfield* and the facts of the case

before the Court is that the door to the interview room was left open. The Court finds such a distinction insignificant when reviewing the totality of the circumstances.

Along with the Virginia Supreme Court and Court of Appeals cases, a case recently decided by this Court also dictates the outcome of Ms. Staton's claim. In *Commonwealth v. David B. Carter* (letter opinion, July 16, 1998) after reviewing precedents from the U.S. Supreme Court and the Fourth Circuit and Virginia case authorities cited above, this Court found an interrogation to be non-custodial on the following facts:

> [The Defendant] voluntarily met with the officers at the police station to discuss the subject of offenses with the detectives. The detectives made the request via telephone, and the defendant arranged for his own transportation to the interview which was brief in duration and conversational in tone. The defendant stated that the door remained partially open throughout the interview and that he had not been escorted to the six-by-ten foot interview room. The detectives did not frisk, search, or place the defendant in cuffs. The tone of the questions was not coercive or threatening.

*Id.* The facts of *Carter* are strikingly similar to Ms. Staton's scenario.

All of the above-mentioned decisions control the disposition of Ms. Staton's claim. Upon considering the totality of the circumstances, the Court observes that Ms. Staton had two days to weigh her decision to come down to the police station and came voluntarily and without police escort. She was questioned by a single detective who engaged in no coercive or questionable techniques during the interview. The interrogation was relatively brief, enduring for approximately a half an hour. Detective Hudson advised her that she was not under arrest but that he may later obtain a warrant. No one searched or handcuffed Ms. Staton; her freedom of movement was never restrained. The Defendant stresses that the "only reasonable assumption to draw from the record is that if Staton had attempted to leave, she would have been formally arrested." The record, however, flatly contradicts that claim. After the interview, Detective Hudson allowed Ms. Staton to leave the police station without arresting her. On these facts, the Court finds that a reasonable person in Ms. Staton's situation would understand that she was not in custody.

## *Conclusion*

Based on the above-stated reasons, the Court denies the Defendant's Motion to Suppress.