COURT OF APPEALS OF VIRGINIA

Present:    Judges Benton, Humphreys and Senior Judge Coleman
Argued by teleconference


ABDUL K. LEE

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 2607-03-1               JUDGE ROBERT J. HUMPHREYS
                                                     OCTOBER 26, 2004
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                           Dean W. Sword, Jr., Judge

            William P. Robinson, Jr. (Robinson, Neeley & Anderson, on brief),
            for appellant.

            Michael T. Judge, Assistant Attorney General (Jerry W. Kilgore,
            Attorney General, on brief), for appellee.


        Abdul K. Lee appeals his convictions, following his conditional pleas of guilty, for five

counts of robbery (in violation of Code § 18.2-58), two counts of wearing a mask in public (in

violation of Code § 18.2-422), five counts of using or displaying a firearm in the commission of

a felony (in violation of Code § 18.2-53.1), one count of entering a bank while armed (in

violation of Code § 18.2-93) and one count of abduction  (in violation of Code § 18.2-47).

Specifically, Lee argues that the trial court erred in denying his motion to suppress statements he

made to police, contending that:  (1) police officers failed to properly advise him of his rights

pursuant to Miranda v. Arizona, 384 U.S. 436 (1966); (2) these officers failed to immediately

cease interrogation after he unequivocally invoked his Miranda right to counsel; and (3) the

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.  Moreover,
as this opinion has no precedential value, we recite only those facts necessary to our holding.

police failed to secure a voluntary and intelligent waiver "of his right not to incriminate himself" before continuing the interrogation. For the reasons that follow, we disagree and affirm Lee's convictions.

We begin by recognizing that:

> On appeal of the denial of a motion to suppress, we view the evidence in the light most favorable to the Commonwealth. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "We are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them," McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*), but we review *de novo* the trial court's application of legal standards such as reasonable suspicion to the particular facts of the case. See Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996).

McCracken v. Commonwealth, 39 Va. App. 254, 258, 572 S.E.2d 493, 495 (2002) (*en banc*). Further, "[i]n reviewing a trial court's denial of a motion to suppress, 'the burden is upon [the appellant] to show that the ruling . . . constituted reversible error.'" McGee, 25 Va. App. at 197, 487 S.E.2d at 261 (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).

A.

Considering the totality of the evidence presented below, there is no merit in Lee's contention that the interview amounted to a custodial situation, or its "functional equivalent," and, therefore, that the detectives failed to properly advise him of his Miranda rights.

The United States Supreme Court has long recognized that Miranda warnings are implicated only during a custodial interrogation. See Oregon v. Mathiason, 429 U.S. 492, 495 (1977). For that reason, "'police officers are not required to administer Miranda warnings to everyone whom they question,' and Miranda warnings are not required when the interviewee's freedom has not been so restricted as to render him or her 'in custody.'" Harris v.

- 2 -

Commonwealth, 27 Va. App. 554, 564, 500 S.E.2d 257, 261-62 (1998) (citation omitted); see also Oregon v. Elstad, 470 U.S. 298, 309 (1985).

The question of "[w]hether a suspect is 'in custody' under Miranda is determined by the circumstances of each case, and 'the ultimate inquiry is simply whether there is a "formal arrest or restraint on freedom of movement" of the degree associated with formal arrest.'" Harris, 27 Va. App. at 564, 500 S.E.2d at 262 (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983)) (citation omitted). That determination "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Stansbury v. California, 511 U.S. 318, 323 (1994); see also Yarborough v. Alvarado, 124 S. Ct. 2140, 2148 (2004) ("[C]ustody must be determined based on how a reasonable person in the suspect's situation would perceive his circumstances."). Accordingly, "[i]f a reasonable person in the suspect's position would have understood that he or she was under arrest, then the police are required to provide Miranda warnings before questioning." Harris, at 564, 500 S.E.2d at 262. As we have previously noted:

> Among the circumstances to be considered when making the determination of whether a suspect was "in custody" are (1) the manner in which the individual is summoned by the police, (2) the familiarity or neutrality of the surroundings, (3) the number of officers present, (4) the degree of physical restraint, (5) the duration and character of the interrogation, and (6) the extent to which the officers' beliefs concerning the potential culpability of the individual being questioned were manifested to the individual. See Bosworth v. Commonwealth, 7 Va. App. 567, 572, 375 S.E.2d 756, 759 (1989); Lanier v. Commonwealth, 10 Va. App. 541, 554, 394 S.E.2d 495, 503 (1990); see also Stansbury, 511 U.S. at 324-25. *No single factor is dispositive of the issue.* See Wass v. Commonwealth, 5 Va. App. 27, 33, 359 S.E.2d 836, 839 (1987).

Id. at 565-66, 500 S.E.2d at 262 (emphasis added).

Here, as the trial court found, Lee was not in custody until the detectives read him his Miranda rights. Initially, three detectives visited Lee at his home and asked Lee to accompany

- 3 -

them to the bureau to talk about a "few matters" related to his car. In doing so, the detectives assured Lee that he was not under arrest. When Lee responded that he could not talk to them at that time, the detectives left Lee's home, agreeing to allow Lee to come to the bureau at a later time. Lee then drove himself to the bureau. After his arrival, the detectives went with Lee to a conference room, where they informed him that he was "not under arrest and he was free to leave at any time." Thus, there was nothing coercive about the manner in which the police "summoned" Lee.

The mere fact that the detectives asked Lee to talk with them at the bureau, rather than speaking with him at his home, does nothing to convert the meeting into a custodial situation. Indeed, the Supreme Court of Virginia has expressly recognized that "[i]t is the custodial nature *rather than the location of the interrogation* that triggers the necessity for giving <u>Miranda</u> warnings." <u>Coleman v. Commonwealth</u>, 226 Va. 31, 47, 307 S.E.2d 864, 872 (1983) (emphasis added); <u>see also</u> <u>Mathiason</u>, 429 U.S. at 495.

Nor is there any evidence on this record from which the trial court could have determined that Lee's freedom to leave the conference room or the police station was restricted in a significant way. <u>See</u> <u>Coleman</u>, 226 Va. at 37, 47, 307 S.E.2d at 866-67, 873; <u>Burket v. Commonwealth</u>, 248 Va. 596, 605-06, 450 S.E.2d 124, 129-30 (1994). Lee was not physically restrained in any manner, and Lee himself testified that the detectives advised him a number of times that he was not under arrest and that he was "free to leave."

Likewise, there was nothing coercive in the fact that two other detectives were present with Detective Dempsey during the interview, nor was there anything coercive in the manner in which the interrogation was conducted. All three detectives had been present when Detective Dempsey initially approached Lee at his home, and the same three detectives were present throughout Lee's interview.

As to whether the officers manifested any belief of culpability to Lee during the interview, a consideration of this factor "encompasses the degree to which it was conveyed to the suspect that he or she was the focus of a criminal investigation and includes circumstances such as the appearance of probable cause to arrest and the extent to which the individual is confronted with evidence of guilt." Harris, 27 Va. App. at 565 n.2, 500 S.E.2d at 262 n.2. Accordingly,

> "'*[e]ven a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest.* The weight and pertinence of any communications regarding the officer's degree of suspicion will depend upon the facts and circumstances of the particular case.'"

Id. (quoting Stansbury, 511 U.S. at 324-25) (emphasis added); see also Ramos v. Commonwealth, 30 Va. App. 365, 370, 516 S.E.2d 737, 740 (1999) ("Whether the officer developed probable cause earlier than the formal arrest was only one factor to be considered in deciding whether the defendant was in custody before the formal arrest."); Kauffmann v. Commonwealth, 8 Va. App. 400, 404-05, 382 S.E.2d 279, 281 (1989) ("The Miranda warnings are not required merely because . . . the investigation has centered on the person being questioned." (citing Mathiason, 429 U.S. at 495)).

Here, although Detective Dempsey agreed that he viewed Lee as a potential suspect before visiting Lee's home, he was uncertain as to Lee's culpability prior to Lee's initial incriminating statements, at which time the detectives read the Miranda warnings. Furthermore, at no time did the detectives express any belief of guilt to Lee himself. Instead, the detectives questioned Lee about the manner in which he paid for his car and his knowledge of the origin of the cash used to purchase the car. During the interrogation, the detectives repeatedly told Lee that he was not under arrest and that he was free to leave.

Considering the totality of the evidence, and despite the fact that the interview (although punctuated with breaks) lasted for approximately 3 hours, we hold that Lee was neither formally arrested nor deprived of his freedom of movement until after he made the incriminating statements to the detectives. Accordingly, the detectives were not required to advise Lee of his Miranda rights prior to his initial incriminating statement, and we therefore hold that the detectives acted appropriately and in accord with the protections of Miranda.

B.

We further find no merit in Lee's contention that his post-Miranda question required police to immediately cease the interrogation. Specifically, Lee asked, "Do you think I need a lawyer?"

> [T]he test for determining whether the accused invoked the right to counsel is an objective one. The Court must determine whether the accused "articulate[d] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney."

McDaniel v. Commonwealth, 30 Va. App. 602, 605, 518 S.E.2d 851, 853 (1999) (quoting Davis v. United States, 512 U.S. 452, 459 (1994)). Indeed, the Supreme Court of Virginia "has consistently held that a *clear and unambiguous* assertion of the right to counsel is necessary to invoke" protections afforded under Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). Midkiff v. Commonwealth, 250 Va. 262, 266, 462 S.E.2d 112, 115 (1995) (emphasis added). Accordingly, the Supreme Court of Virginia has

> held that defendants' questions, "Do you think I need an attorney here?," Mueller [v. Commonwealth, 244 Va. 386, 396, 422 S.E.2d 380, 387 (1992)], "You did say I could have an attorney if I wanted one?," Eaton [v. Commonwealth, 240 Va. 236, 250, 397 S.E.2d 385, 393 (1990)], and "Didn't you say I have the right to an attorney?," Poyner v. Commonwealth, 229 Va. 401, 410, 329 S.E.2d 815, 823, cert. denied, 474 U.S. 865 (1985), fell short of being clear assertions of the right to counsel. Further, the United

States Supreme Court recently held that the statement, "Maybe I should talk to a lawyer," was not an invocation of the right to counsel and, therefore, subsequent statements by the accused did not need to be suppressed. Davis, [512 U.S. at 462].

Id. at 266-67, 462 S.E.2d at 115. Lee's statement clearly falls within the category of statements that do not clearly and unambiguously request an attorney. Thus, the trial court properly denied Lee's motion to suppress on this ground.

C.

Finally, Lee's argument that he did not freely and voluntarily waive his Miranda rights is also baseless. Lee asserts on appeal that his incriminating statements were given involuntarily because, initially, the detectives did not provide him with the Miranda warnings and then, post-Miranda, the detectives did not obtain an affirmative statement from him that he wished to waive his rights and continue speaking with the detectives.

> "The Commonwealth has the burden to prove, by a preponderance of the evidence, that a defendant's confession was freely and voluntarily given." Bottenfield v. Commonwealth, 25 Va. App. 316, 323, 487 S.E.2d 883, 886 (1997). On appeal, the issue of voluntariness is a question of law requiring an independent determination. E.g., Wilson v. Commonwealth, 13 Va. App. 549, 551, 413 S.E.2d 655, 656 (1992). "In assessing voluntariness, [we] must determine whether 'the statement is the "product of an essentially free and unconstrained choice by its maker," or . . . whether the maker's will "has been overborne and his capacity for self-determination critically impaired."'" Roberts v. Commonwealth, 18 Va. App. 554, 557, 445 S.E.2d 709, 711 (1994) (quoting Stockton v. Commonwealth, 227 Va. 124, 140, 314 S.E.2d 371, 381 (1984) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973))). To make that determination, we must look to the "'totality of all the surrounding circumstances,'" Commonwealth v. Peterson, 15 Va. App. 486, 488, 424 S.E.2d 722, 723 (1992) (quoting Gray v. Commonwealth, 233 Va. 313, 324, 356 S.E.2d 157, 163 (1987)), including "the defendant's age, intelligence, mental and physical condition, background and experience with the criminal justice system, the conduct of the

- 7 -

police, and the circumstances of the interview." Bottenfield, 25 Va. App. at 323, 487 S.E.2d at 886.

Washington v. Commonwealth, 43 Va. App. 291, 302-03, 597 S.E.2d 256, 261-62 (2004).

We have already held that Lee was not in custody prior to the point in time in which the detectives read him his Miranda rights. Thus, we do not address that portion of Lee's argument further. See part A, *supra*.

In regard to Lee's post-Miranda statements, we recognize that Lee was a 21-year-old high school graduate at the time of the interview. Further, the trial court found that "[t]here was no evidence presented that would indicate [Lee] was less than at least average intelligence and understanding" and that Lee "easily understood the English language and the questions presented to him by counsel" during the suppression hearing. Moreover, despite Lee's contention otherwise, "[a]n express written or oral statement of waiver of rights is not required. Waiver can be inferred from the actions and words of the person interrogated." Cheng v. Commonwealth, 240 Va. 26, 35, 393 S.E.2d 599, 604 (1990) (citing North Carolina v. Butler, 441 U.S. 369, 373 (1979)).

Considering the fact that Lee continued speaking with police after they read him the Miranda warnings, and in the absence of any evidence of police coercion, we hold that Lee's incriminating statements were freely and voluntarily given. Accordingly, the trial court properly denied Lee's motion to suppress on this ground.

For the reasons stated above, we affirm Lee's convictions.

Affirmed.