# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

v.

Wanda Turner

September 30, 2013

Case No. 12-294

By Judge Paul M. Peatross, Jr.

This matter comes before the Court on the Motion to Suppress filed by Defendant, Wanda Turner, seeking to have the Court rule as inadmissible certain statements by the Defendant made to the police on March 5, 2012. Evidence was presented on September 9, 2013, and the Court took the matter under advisement to review the evidence and legal authority.

*Factual Findings*

The Defendant was arrested in Norfolk, Virginia, on March 5, 2012, and charged with the murder of Robert Edward Snead in Charlottesville, Virginia, on March 3, 2012. After being told she was charged with murder, she was read her rights by Detective W. A. Newberry of the Charlottesville Police Department. See page 4 of the transcript of the Defendant's interview with Detective Newberry and Detective James Mooney introduced as Exhibit 6 and Commonwealth's Exhibit 1, the "Rights Advisory" Form received into evidence. The Court also received into evidence the CD containing the video and audio of the interview, which the Court has observed. The Rights Advisory Form concluded with the following statement: "Sign here if you understand your rights and are willing to talk to us about this case."

In the advice of rights, the Defendant was read the following right: "If you are willing to talk to us now, you have the right to stop talking at any time." This statement was also on the written Rights Advisory Form, which the Defendant signed. The transcript and the audio and video then show the Defendant was told the following by Detective Mooney:

We want to talk to you about the case. Just keep in mind this last one, if you are willing to talk to us now you have the right to stop talking at any time. So if you start talking to us and you get to a point you do not want to talk anymore you just need to tell us that. Okay. We want to talk to you about why we are here and why you are here.

Transcript at page 4, lines 14-20.

Detective Newberry then says:

This one is saying do you understand what your rights are? We are going to explain the case and we are going to explain why you are here and why we are here, okay? But if you understand your rights that is what we are asking you to sign here for. If you want to stop talking at any time that is your right to do so.

Transcript at page 4, lines 21-24, and page 5, lines 1-2.

After signing the Rights Advisory, Wanda Turner answered questions until, at page 17 of the transcript at lines 21-24, she was asked by Detective Newberry: "So I want to know what happened. What started this? What led to it?" Wanda Turner said: "Man, I don't got nothing else to say, Man. I ain't got nothing else to say. I really don't believe Karen said all of that." Transcript, page 17, lines 23-25.

This exchange can be heard on the audio, and Detective Newberry testified in open court on September 9, 2013, he heard these statements made by Wanda Turner.

As shown in the transcript at page 18, Detective Newberry then went directly into a recitation of about what Karen said to him about the defendant's involvement in the incident.

### Questions Presented

A. Was there a knowing waiver of Miranda rights made freely and voluntarily by the defendant, Wanda Turner?

B. Did the Defendant, Wanda Turner, exercise her right to stop talking at any time?

C. Were any incriminating statements by Wanda Turner involuntary, i.e., a product of coercion or made when her capacity for self-determination was impaired?

D. Does any violation of Wanda Turner's Miranda rights bar the introduction of non-testimonial evidence at trial?

*Legal Analysis*

### A. *Waiver of Rights*

The Commonwealth must demonstrate to the court by a preponderance of the evidence that there was a knowing waiver of rights made freely and voluntarily by the defendant. *Johnson v. Commonwealth*, 220 Va. 146, 158 (1979). Whether the defendant did in fact waive his or her rights is a factual question that the court must decide by considering the totality of the circumstances. *Bottenfield v. Commonwealth*, 25 Va. App. 316 (1997). In its evaluation, the court may consider the defendant's age, intelligence, mental and physical condition, and experience with the criminal justice system. *Id.* If there is a signature waiving the rights, it is "strong proof of the validity of the waiver." *Frye v. Commonwealth*, 231 Va. 370 (1986).

Defense counsel argues that the Rights Advisory Form did not contain the word "waiver" and that the Commonwealth has not met its burden. However, this Court rules that the advice of rights indicated that Wanda Turner could read and write and was not threatened by the law enforcement authorities or had been promised anything by them. Most importantly, she signed the statement that she understood her rights and was willing to talk to the police, which she did initially. This Court rules she waived her *Miranda* rights.

### B. *Exercise of Her Right To Stop Talking*

When a defendant clearly and unambiguously invokes the right to remain silent, the police officers must stop the interrogation immediately. *Mervin-Frazier v. Commonwealth*, 2010 Va. App. LEXIS 134, (Apr. 6, 2010). This inquiry focuses on the circumstances of the case to determine if the language used by the defendant demonstrated a desire to cease all questioning. *Midkiff v. Commonwealth*, 250 Va. 262, 268 (1995).

The Court of Appeals has considered a variety of cases to determine whether or not the language of the defendant was sufficient to invoke the right to remain silent. The court has held that the following language was inadequate to invoke the Fifth Amendment right because it was too ambiguous: "Do I have to talk about it now?" *Akers v. Commonwealth*, 216 Va. 40, 45-46 (1975); "I just don't think I should say anything." *Burket v. Commonwealth*, 248 Va. 596, 609-10 (1994). "I don't have anything more to say." *Green v. Commonwealth*, 27 Va. App. 646, 652-54 (1998). However, in *Mervin-Frazier*, the court held that the statement "I don't think I want to talk any more now" was not ambiguous because, shortly thereafter, the defendant explained that she was confused and that is why "I'm deciding now to stop talking." *Id.* at 19.

In *Green, supra*, the defendant had discussed another criminal act with the officer other than the crime about which he was being questioned. When

the officer attempted to discuss the subject crime being investigated, the defendant told the officer "that he did not have anything more to say." This assertion was not a clear and unambiguous statement of his right to remain silent as it did not cover all questioning of the defendant about all crimes. *Id.* at 648-54.

The Supreme Court has given guidance on continued questioning by police after an initial refusal of a defendant to answer questions. In *Michigan v. Mosley*, 423 U.S. 96, 104-06 (1975), cited in *Weeks v. Commonwealth*, 248 Va. 260, 271 (1994):

> First, whether defendant "was carefully advised" before the initial interrogation "that he was under no obligation to answer any questions and could remain silent if he wished." Second, whether there was an immediate cessation of the initial interrogation, and no attempt to persuade defendant to reconsider his position. Third, whether the police resumed questioning "only after the passage of a significant period of time. Fourth, whether *Miranda* warnings preceded the second questioning. Fifth, whether the second interrogation was limited to a crime that had not been the subject of the earlier . interrogation."

In this case, the defendant was advised four times orally (Transcript at pp. 4-5) that, if she was willing to talk to the police initially, she had the right to stop talking at any time. Wanda Turner was told in writing (Commonwealth's Exhibit 1) "If you are willing to talk to us now, you have the right to stop talking at any time."

After answering questions from pages 5-16 and hearing what the police had to say about talking with Karen Nash, Wanda Turner said twice she had nothing else to say. She followed with a declaration that she did not believe what Karen Nash had said. Detective Newberry ignored her statements and went into a recitation about Karen Nash and the hope that Wanda Turner would give the police a statement about what happened.

There was no pause, no re-advice of rights, no inquiry about clarification of the statements, which Detective Newberry testified he heard from the mouth of the defendant. The statement was she had nothing else to say, which she repeated. The statement that she did not believe Karen Nash was not a question that called for further explanation from the officer.

The Court finds the statements by Wanda Turner to stop talking to be clear and unambiguous. Detective Newberry had the duty to stop the interrogation. Any statements made by the defendant after page 17 are suppressed.

## C. *Voluntariness of Statements before Page 17*

The statements made to the police not suppressed above must be the product of "an essentially free and unconstrained choice by its maker." *Mervin-Frazier, supra,* at p. 13. The Court has to assess voluntariness by looking to the totality of all the surrounding circumstances, which include age, intelligence, mental and physical condition, background and experience with the criminal justice system, and length of interview. *Bottenfield v. Commonwealth,* 25 Va. App. 316, 323 (1997).

A view of the audio and video on March 5, 2012, shows the defendant could read and write, that she had not been threatened or promised anything, was offered food and cigarettes, was forty-seven years of age, and was under no apparent mental or physical disability at the time of the statements in question. The questions by the police were not overbearing or coercive. The interview was short in duration as of the time she said she had nothing else to say, 18 to 20 minutes.

The Court finds the statements to be voluntary.

## D. *Bar of Non-testimonial Evidence*

In the absence of actual coercion or other circumstances calculated to undermine the suspect's ability to exercise free will, the scope of suppression resulting from a *Miranda* violation is limited to the post-violation portion of the statement itself. Suppression of the "fruit" from a statement taken in violation of *Miranda* requires proof that the statement was involuntary under the Fifth Amendment. *Mundy v. Commonwealth,* 11 Va. App. 461, 476-77 (1990).

A statement is involuntary under the Fifth Amendment where the totality of the circumstances establish that the suspect's will was overcome and his capacity for self-determination was critically impaired by behavior and conditions to which he was subjected by the police. *Mundy, supra.*

This Court has reviewed the balance of the interview and applied the above law including the factors set out in C above. It has noted the statements identified in paragraphs 7 and 9 of the Motion to Suppress. Although Wanda Turner became physically ill at pages 29-30 of the transcript, the police gave her water, offered her a soda, and told her to breathe. At page 33 Detective Newberry said he could not put words into her mouth, which she acknowledged. Again at page 45 she was told the police did not want to put words into her mouth. As the interview progressed, the police gave her a break by telling her to breathe, to take her time, and talk when she was ready. (Transcript at 46.) The interview lasted about two and a half hours.

The Court has also considered the cases cited in the Commonwealth's Memorandum in Response to Defendant's Motion to Suppress on page 5 regarding cases which show involuntary statements as a result of police misconduct.

This Court finds the statements post violation of *Miranda* were voluntary, and the non-testimonial evidence will not be barred in the trial of the case.