COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Chafin and O'Brien
Argued at Williamsburg, Virginia


ANDRE MARQUISE HARRIS

MEMORANDUM OPINION* BY
v.      Record No. 1754-17-1        JUDGE MARY GRACE O'BRIEN
MARCH 26, 2019
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Christopher W. Hutton, Judge

Stephen K. Smith for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Following a bench trial, Andre Marquise Harris ("appellant") was convicted of two counts

of burglary, in violation of Code § 18.2-91; grand larceny of a firearm, in violation of Code

§ 18.2-95; petit larceny, in violation of Code § 18.2-96; and reckless handling of a firearm, in

violation of Code § 18.2-56.1.  Appellant filed a motion to suppress statements made during a

two-hour police interview, which the court granted in part and denied in part.  On appeal, he asserts

that the court erred by not granting his suppression motion in full.  For the following reasons, we

agree with the court's ruling and affirm appellant's convictions.

BACKGROUND

Appellant was admitted to the hospital on December 27, 2015 following a self-inflicted

gunshot wound to his left leg.  After two surgeries and a blood transfusion, appellant was released

from the hospital on December 31, 2015.  Shortly before his release, appellant received pain

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

medication. Upon appellant's discharge, two Hampton police officers arrested and transported him to the police station for questioning about burglaries they were investigating.

At the police station, appellant was dressed only in his hospital gown with a bedsheet wrapped around him. He was seated in an interview room, and Detective William Darden provided him a second chair to elevate his injured leg. Detective Darden advised appellant of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and appellant signed a form waiving these rights. Detective Darden and his partner, Detective Jones, interviewed appellant for approximately two hours.[1] Detective Darden observed that appellant, who was twenty-one years old and had completed the tenth grade, was "focused and articulate." The interview, which was videotaped, began at 1:01 p.m. and concluded at approximately 3:00 p.m. The court viewed the videotape at the suppression hearing.

During the interview, Detectives Darden and Jones entered and left the room several times. Appellant was permitted to smoke a cigarette and drink water. At 1:17 p.m., appellant made an admission about his involvement in one of the burglaries. Detective Darden continued to question appellant until 1:50 p.m. and then left the room.

Detective Darden returned at 1:54 p.m. and continued to speak with appellant. At that point, appellant mentioned "some degree of fatigue," but the court found that he was "still very conversant with [Detective] Darden." At 1:58 p.m., Detective Darden left again, and appellant attempted to sleep. Detective Jones entered the room at 2:03 p.m. and spoke to appellant for approximately ten minutes. During that time, appellant expressed that he was having difficulty cooperating due to lack of sleep. At 2:23 p.m., appellant admitted "something about being a lookout on the second [house]" that was burglarized. By 2:25 p.m., appellant "was yawning and his head was back." At 2:27 p.m., the detectives discussed bringing appellant's pain medicine to him.

---

[1] The record does not indicate Detective Jones's first name.

Appellant testified that during the interview he "was so drugged up that [he] couldn't stay focused," and he could not remember anything he said. He also stated that he fell asleep in the interview room and his leg was "throbbing" from pain. However, appellant acknowledged that he did not tell the detectives about the pain until the end of the interview.

The court found that the interview was consensual and voluntary until 2:25 p.m. when appellant "lost his ability to articulate." Prior to that time, appellant was found to be "appropriately responsive" to the detectives' questions. The court suppressed all statements made after 2:25 p.m., but ruled that statements made before that time were admissible.

ANALYSIS

Appellant contends that the court erred by not suppressing the entirety of his statements to police during the interview because they were made involuntarily. He asserts that the police engaged in coercive conduct by transporting him to the police station while he was still wearing his hospital gown and interviewing him while he was under the influence of pain medication. Appellant concedes that he knowingly and intelligently waived his Miranda rights. See Miranda, 384 U.S. at 475.

However, at a hearing on a motion to suppress, the Commonwealth must prove by a preponderance of the evidence that "a defendant's confession was freely and voluntarily given." Bottenfield v. Commonwealth, 25 Va. App. 316, 323 (1997). In assessing voluntariness, "the trial court must decide whether the statement was the 'product of an essentially free and unconstrained choice by its maker,' or whether the maker's will 'has been overborne and his capacity for self-determination critically impaired.'" Id. (quoting Commonwealth v. Peterson, 15 Va. App. 486, 487-88 (1992)). The court must look to "the totality of all the surrounding circumstances." Id. (quoting Peterson, 15 Va. App. at 488).

"On appeal, we consider the entire record in determining whether the trial court properly denied appellant's motion to suppress." Patterson v. Commonwealth, 17 Va. App. 644, 648 (1994). The issue of voluntariness presents a question of law requiring us to make an independent determination from the totality of the circumstances. Novak v. Commonwealth, 20 Va. App. 373, 386-87 (1995). See Midkiff v. Commonwealth, 250 Va. 262, 268-69 (1995). In conducting our analysis, we consider a defendant's "age, intelligence, mental and physical condition, background and experience with the criminal justice system, the conduct of the police, and the circumstances of the interview." Washington v. Commonwealth, 43 Va. App. 291, 302 (2004) (quoting Bottenfield, 25 Va. App. at 323). "[W]e are bound by the trial court's subsidiary factual findings unless those findings are plainly wrong." Wilson v. Commonwealth, 13 Va. App. 549, 551 (1992).

As a threshold matter, to find a statement involuntary, we must conclude that it resulted from police coercion. Washington, 43 Va. App. at 303. See also Peterson, 15 Va. App. at 488 ("[E]vidence of coercive police activity 'is a necessary predicate to the finding that a confession is not "voluntary"'" (quoting Colorado v. Connelly, 479 U.S. 157, 164 (1986))). In determining whether the police coerced a confession, we evaluate "the interrogation techniques employed, including evidence of trickery and deceit, psychological pressure, threats or promises of leniency, and [the] duration and circumstances of the interrogation." Terrell v. Commonwealth, 12 Va. App. 285, 291 (1991).

The United States Supreme Court case of Mincey v. Arizona, 437 U.S. 385 (1978), demonstrates when police actions in questioning a defendant may render his confession involuntary. In Mincey, the defendant was in the intensive care unit, "lying on his back on a hospital bed, encumbered by tubes, needles, and breathing apparatus." 437 U.S. at 399. He complained that his pain was "unbearable" and that he could not think clearly. Id. at 398. However, the police persisted in questioning him, only stopping when the defendant "lost consciousness or received medical

- 4 -

treatment . . . and returned relentlessly" to questioning him after each interruption. Id. at 400-01. The Supreme Court held that the defendant's statements should have been suppressed, finding that they were "the result of virtually continuous questioning of a seriously and painfully wounded man on the edge of consciousness." Id. at 401.

Here, appellant contends that he was susceptible to police coercion because of his recent release from the hospital, lack of clothing except a hospital gown, and medical condition. He analogizes his situation to the circumstances of Commonwealth v. Peterson, 15 Va. App. 486. In Peterson, police officers interrogated the defendant as he was being transported to the hospital in an ambulance. 15 Va. App. at 488. During questioning, the defendant had difficulty breathing, experienced chest pain, and was connected to a heart monitor. Id. His vision was blurred, and he was unable to understand what was occurring because of his injuries. Id. We concluded that the evidence supported the trial court's finding that the police "overbore [the defendant's] will" with coercive activity, thereby rendering his statements involuntary. Id. Cf. Sellers v. Commonwealth, 41 Va. App. 268, 272, 275-76 (2003) (finding no evidence of police coercion because the defendant did not "suffer the serious and debilitating physical problems that Peterson was suffering" despite the detective's act of waking the defendant twice during his interview).

In this case, however, appellant has failed to establish any coercive police activity that rendered his statements involuntary. At the suppression hearing, appellant acknowledged that he did not tell the detectives about his pain until the end of the interview. Although he had taken pain medicine and testified that he fell asleep during the interview, the court reviewed the videotape and found that he was fully conversant with the detectives and seemed "appropriately responsive" to the questions. These factual findings are not plainly wrong, and therefore we will not disturb them on appeal. See Wilson, 13 Va. App. at 551. Additionally, we have stated:

> [A] deficient mental condition (whether the result of a pre-existing
> mental illness or, for example, pain killing narcotics administered

> after emergency treatment) is not, without more, enough to render a
> waiver [or confession] involuntary . . . .  The evidence [must] show
> that law enforcement officials exploited [the accused's] weakened
> condition with coercive tactics.

Rodriguez v. Commonwealth, 40 Va. App. 144, 163 (2003) (quoting United States v. Cristobal, 293 F.3d 134, 141 (4th Cir. 2002)).  Although the court found that appellant "lost the ability to articulate" at 2:25 p.m., the record does not show that the police exploited appellant's condition at any point before or during the interview.

Further, unlike the defendants in Mincey and Peterson, at the time of his confession appellant had already received medical treatment for his gunshot wound and had been released from the hospital.  Cf. Mincey, 437 U.S. at 399; Peterson, 15 Va. App. at 488.  Following appellant's discharge, the police transported him to the police station, where they provided a second chair to elevate his injured leg.  They also gave him water and a cigarette, and they took numerous breaks during the two-hour interview.  Appellant was not handcuffed or threatened, and his statements did not result from deceptive or confusing questioning tactics.

Based on the totality of circumstances, we hold that the police did not use coercive tactics to obtain appellant's confession.  Therefore, we conclude that the court did not err by denying in part appellant's suppression motion, and we affirm appellant's convictions.

Affirmed.